72 U.S. 113
 18 L.Ed. 544
 5 Wall. 113
 SHELTON
v.
THE COLLECTOR.
 December Term, 1866
 
 THIS case, which was brought up by a writ of error to the Circuit Court of the United States for the District of Massachusetts, was submitted to the court below upon an agreed statement of facts, substantially as follows:
 Shelton & Co.—the plaintiffs in error, who were also the plaintiffs below—imported a quantity of molasses from the island of Cuba into the port of Boston. At the time of the exportation from Cuba it was sound and sweet. Upon reaching Boston it was soured, having become so during the voyage. There was a material difference between the value of sweet and sour molasses both at the port of exportation and the port of importation,—sweet molasses being of the greater value. The molasses in question was entered at the full value of sweet molasses. The plaintiffs demanded to have the damage appraised and allowed in the computation of duties. The defendant caused the damaged to be appraised, but afterwards (under instructions from the Secretary of the Treasury) refused to allow them, and duties were exacted by the defendant, and paid by the plaintiffs, under protest, upon the full value of the molasses.
 It was agreed that if the court should be of opinion that damage by souring during the voyage of importation was a damage on the voyage, within the meaning of the provision of the fifty-second section of the act of March 2d, 1799, judgment was to be entered for the plaintiffs—otherwise for the defendant.
 Upon this agreement the court below gave judgment for the defendant, and this writ of error was prosecuted to reverse it.
 The fifty-second section of the act of March 2d, 1799, above-mentioned, enacts:
 'That all goods, wares, and merchandise of which entry shall have been made incomplete, or which shall have received damage during the voyage, to be ascertained by the proper officers of the port or district in which the said goods, &c., shall arrive, shall be conveyed to some warehouse or storehouse to be designated by the collector, in the parcels or packages containing the same, there to remain at the expense and risk of the owner or consignee, under the care of some proper officer, until the particulars, cost, or value, as the case may require, shall have been ascertained: Provided, that no allowance for the damage on any goods, wares, and merchandise that have been entered, and on which the duties have been paid or secured to be paid, and for which a permit has been granted to the owner or consignee thereof, shall be made, unless proof to ascertain such damage shall be lodged in the custom-house, &c., within ten days after the landing of such merchandise.'[1]
 As having a certain bearing on the subject, reference may be made also to the twenty-first section of an act of March 1, 1823, as follows:[2]
 'That before any goods, wares, or merchandise which may be taken from any wreck shall be admitted to an entry, the same shall be appraised in the maner prescribed in the sixteenth section of this act; and the same proceedings shall be ordered and executed in all cases where a reduction of duties shall be claimed on account of damage which any goods, wares, or merchandise shall have sustained in the course of the voyage; and in all cases where the owner, importer, consignee, or agent shall be dissatisfied with such appraisement, he shall be entitled to the privileges provided in the eighteenth section of this act.'
 The manner of appraisement referred to as provided in the sixteenth section, and the privileges provided in the eighteenth section, were not material to the issue in this case.
 
 Mr. Stanbery, A. G., and Mr. Ashton, Assistant A. G., for the collector:
 
 Goods which have been completely entered, under whatever circumstances such entry has been made, are not entitled to any allowance for damage, from whatever cause, unless proof of such damage has been furnished within ten days after the landing of the goods, and other action had.
 Without a statutory exception, the general law regulating entries of goods and assessments of duties would of course disallow such damage; and the exception claimed in this suit withholds, by express terms, its benefits where 'proof to ascertain such damage' has not been 'lodged in the custom-house' of the port 'within ten days after the landing of such merchandise.' Here is a condition precedent, which the case, by its omission to mention it, shows has not been fulfilled by the importer. The entry was regular and complete, and it follows that the entire fifty-second section is inapplicable, except as by its proviso it prohibits the allowance claimed.
 But any provision of the act of 1799 favorable to the plaintiffs was repealed by the act of 1823.
 The act of 1823 declares that 'no entry shall be admitted until after appraisement of goods taken from any wreck; and the same proceedings shall be ordered and executed in all cases where a reduction of duties shall be claimed on account of damage which any goods, wares, or merchandise shall have sustained in the course of the voyage.'
 If, therefore, under section fifty-two of the act of 1799 the importers could have claimed the benefit of any appraisement of damages to their goods, 'sustained in the course of the voyage,' after they had procured them to be entered at the custom-house (with or without the lodgement therein of proof within ten days after landing), under the terms of this section, it is manifest they could not have the benefit of such an appraisement now, since the act of 1823 thus expressly prohibits the admission of the very entry they made. Therefore, if the importers chose to forego this prohibition of entry, by entering the goods according to invoice, they must submit to the consequences of their voluntary action.
 Whenever, in fact, the invoice has been the basis of an entry at the custom-house, complete or incomplete, or whenever an entry has been made with a specific valuation, there is no power to reduce the corresponding assessment of duties.
 As an importer is not, in any case of damage in the course of the voyage, imperfect data, wreck, &c., obliged to make entry before appraisement, under the statutes cited, the reason of the rule binding him to abide his entry is palpable.
 No opposite counsel appeared.
 Mr. Justice SWAYNE delivered the opinion of the court.
 
 
 1
 The question presented for our determination in this case is a purely statutory one, and it must be decided by the light of the laws of Congress, which relate to the subject.
 
 
 2
 The 52d section of the act of March 2d, 1799, declares that goods, of which an incomplete entry has been made, or which shall have received damage during the voyage, to be ascertained by the proper officers, shall be conveyed in the parcels or packages containing them to some warehouse, to be designated by the collector, and that they shall remain there at the expense of the owner or consignee, under the care of some proper officer, 'until the particulars, cost, or value, as the case may be, shall be ascertained.' The proceedings touching the appraisement, in case of damage during the voyage, are particularly prescribed. The proper deduction is also provided for, whether the goods are chargeable with a duty ad valorem, or a specific duty. The section concludes with a proviso, that no allowance shall be made for the damage on any goods and merchandise which have been entered, and on which the duties have been paid, or secured to be paid, and for which a permit has been granted, unless the proof to ascertain the damage shall be lodged in the custom-house within ten days after the merchandise was landed.
 
 
 3
 The act of the 3d of March, 1823, provides that, before goods taken from a wreck shall be entered, they shall be appraised in the manner prescribed by the 16th section of the act, and that the same proceedings shall be had, in all cases, where a reduction of duties is claimed on account of the damage which any goods may have sustained in the course of a voyage.
 
 
 4
 It provides further, that in all cases, when the owner or consignee is dissatisfied with the appraisement, he may avail himself of the privileges given by the 18th section of the act.
 
 
 5
 It is not necessary to advert to the 16th and 18th sections more particularly. They embrace details in nowise material to the question under consideration. In so far as they are inconsistent with the mode of ascertaining the damage to the goods prescribed by the act of 1799, the former act must yield to the latter, and it is to that extent repealed. But this in no wise affects the limitation of the time, fixed by the act of 1799, within which the proof of the damage must be lodged in the custom-house.
 
 
 6
 The plaintiffs were clearly not entitled to recover, because it did not appear that this requirement of that act had been complied with. It was neither agreed nor made to appear aliunde that any proof was filed within the ten days.
 
 
 7
 There is another objection, which is equally conclusive. The statute of 1823 requires the damage to be ascertained before the goods are entered at the custom-house. This order of proceeding was attempted to be invested by the plaintiffs. They entered the molasses regularly at the in voice price, and then insisted upon an appraisement of the damage, and a corresponding reduction of the duties, and the latter being refused, paid the full amount under protest. The protest was unavailing. The claim for an appraisement, and for the consequent reduction of the duties, came too late. The door to relief was then closed, and no power but the legislature could reopen it. The right was one which the importers might assert or waive at their option. The entry of the goods was such a waiver, and it was final. There was no power in the executive department of the government competent to restore it. We place our decision upon two grounds:
 
 
 8
 One—that the requisite proof was not lodged in the custom-house within the time prescribed by the act of 1799.
 
 
 9
 The other—that the molasses was completely entered before the proceedings authorized by the act of 1823 were demanded and taken.
 
 The judgment below is
 
 10
 AFFIRMED.
 
 
 
 [1]
 1 Stat. at Large, pp. 665, 666.
 
 
 [2]
 Id. 736.