285 U.S. 393 (1932)
BURNET, COMMISSIONER OF INTERNAL REVENUE,
v.
CORONADO OIL & GAS CO.
No. 341.
Supreme Court of United States.
Argued January 15, 1932.
Reargued March 16, 1932.
Decided April 11, 1932.
CERTIORARI TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.
Solicitor General Thacher, with whom Assistant Attorney General Youngquist and Messrs. Sewall Key, Hayner N. Larson, and Francis H. Horan were on the brief, for petitioner.
Messrs. David A. Richardson and Thos. P. Gore, with whom Messrs. Samuel W. Hayes and Eugene Jordan were on the brief, for respondent.
*397 MR. JUSTICE McREYNOLDS delivered the opinion of the Court.
By the Enabling Act Congress required as a condition precedent to the admission of Oklahoma into the Union that her constitution should make provision for common schools; and for their benefit it granted certain lands to the State with the proviso that those valuable for minerals, *398 gas and oil should not be sold prior to January 1, 1915, but might be leased. Act of June 16, 1906, 34 Stat. 267, 270, 272, 273. The State Constitution established a common school system and pledged her faith to preserve the lands so conveyed by the United States as a sacred trust, "and to keep the same for the uses and purposes for which they were granted." The legislature prescribed regulations for leasing and directed payment of the proceeds into the school fund. Oklahoma Comp. Statutes of 1921, §§ 9415, 9417, 9423.
In January, 1914, some of these lands were leased to the Coronado Oil and Gas Company; renewals followed in 1919. Under the first lease the State received fifty per cent. and under the second twelve and one-half per cent. of the gross production of oil and gas. During the years here important the lessee's entire income came from the sale of its portion of such output.
The Commissioner of Internal Revenue assessed income and excess-profits taxes upon the corporation's net income for 1917, 1918 and 1919. The Board of Tax Appeals approved his action; the Court of Appeals, District of Columbia, ruled otherwise. The latter held that the lease to the Coronado Company was an instrumentality of the State for the utilization of lands dedicated to the support of public schools and that to tax the fruits of the lease would burden her in the performance of the governmental function of maintaining such schools. This conclusion, it properly thought, was necessary under Gillespie v. Oklahoma, 257 U.S. 501.
We are disposed to apply the doctrine of Gillespie v. Oklahoma strictly and only in circumstances closely analogous to those which it disclosed. In principle, however, the present claim of exemption cannot be distinguished from the one presented in the earlier cause and we adhere to the rule there approved.
*399 True it is, as stated in Group No. 1 Oil Corp. v. Bass, 283 U.S. 279, 282, 283, "This Court has consistently held that where property or any interest in it has completely passed from the government to the purchaser, he can claim no immunity from taxation with respect to it, merely because it was once government-owned, or because the sale of it effected some government purpose. . . . Property which has thus passed from either the national or a state government to private ownership becomes a part of the common mass of property and subject to its common burdens." And, as there distinctly indicated, the exemption claimed by the Oil Corporation was denied because under the settled rule applied by the Texas Supreme Court the oil and gas from disposal of which the corporate income arose had been purchased, not obtained under a lease  title had passed out of the State by a present sale. Status of the title was matter for determination under laws of the State as construed and applied by her courts. In the present cause there is no basis for saying that, according to the local law, the transaction between the State and the lessee amounted to a sale. The distinction between cases involving sales and those where leases had been made seemed sufficiently apparent when Group No 1 Oil Corp. v. Bass was decided and is not less obvious now.
"Just what instrumentalities of either a state or the federal government are exempt from taxation by the other cannot be stated in terms of universal application. But this Court has repeatedly held that those agencies through which either government immediately and directly exercises its sovereign powers, are immune from the taxing power of the other." Metcalf & Eddy v. Mitchell, 269 U.S. 514, 522.
The opinion in Gillespie v. Oklahoma, supra, has often been referred to as the expression of an accepted principle. *400 Metcalf & Eddy v. Mitchell, supra; Jaybird Mining Co. v. Weir, 271 U.S. 609, 613; Northwestern Insurance Co. v. Wisconsin, 275 U.S. 136, 140; Heiner v. Colonial Trust Co., 275 U.S. 232, 234; Shaw v. Oil Corp., 276 U.S. 575, 579; Panhandle Oil Co. v. Knox, 277 U.S. 218, 221, 222; Carpenter v. Shaw, 280 U.S. 363, 366; Willcuts v. Bunn, 282 U.S. 216, 229; Group No. 1 Oil Corp. v. Bass, supra; Indian Motocycle Co. v. United States, 283 U.S. 570, 576; Choteau v. Burnet, 283 U.S. 691, 696.
When Oklahoma undertook to lease her public lands for the benefit of the public schools she exercised a function strictly governmental in character. Consequently, South Carolina v. United States, 199 U.S. 437, much relied upon, is not in point.
The States are essential parts of the plan adopted by the Federal Constitution; and we accept as settled doctrine that the United States can lay no tax upon their governmental instrumentalities. Texas v. White, 7 Wall. 700, 725; Collector v. Day, 11 Wall. 113; Pollock v. Farmers Loan & Trust Co., 157 U.S. 429, 584; Farmers Bank v. Minnesota, 232 U.S. 516, 527.
"It is an established principle of our constitutional system of dual government that the instrumentalities, means and operations whereby the United States exercises its governmental powers are exempt from taxation by the States, and that the instrumentalities, means and operations whereby the States exert the governmental powers belonging to them are equally exempt from taxation by the United States." Indian Motocycle Co. v. United States, supra. Each government is supreme in its sphere; and in order to preserve our dual system this fact must be given practical recognition.
Here the lease to the respondent was an instrumentality of the State for the purpose of carrying out her duty in respect of public schools. To tax the income of the lessee *401 arising therefrom would amount to an imposition upon the lease itself.
The challenged judgment must be
Affirmed.
MR. JUSTICE STONE, dissenting.
I think the judgment below should be reversed and Gillespie v. Oklahoma, 257 U.S. 501, should be overruled. Neither can stand as the law of this Court consistently with the principles recently reaffirmed in Group No. 1 Oil Corp. v. Bass, 283 U.S. 279.
The State of Texas, like the State of Oklahoma, has set apart a portion of its public domain for educational purposes. It has granted oil and gas leases of these lands, not differing in any material respect from the Oklahoma lease involved in this case. The royalties received by the State from the leases are devoted to the University of Texas, as Oklahoma devotes the income derived from its leases to its public schools. In Group No. 1 Oil Corp. v. Bass, supra, decided less than a year ago, this Court, notwithstanding its decision in the Gillespie case that the income of the lessees of Indian oil lands could not be taxed by Oklahoma, upheld the right of the National Government to assess and collect a tax upon the income received by the lessee of one of the Texas leases, from the sale of oil produced from the leased land. It was pointed out that under Texas law the lessee, by virtue of his lease, became the owner of the oil underground and that the taxed income was derived from the sale of oil which was his own property. In upholding the tax the Court said (pp. 282-283):
"Property sold or otherwise disposed of by the government, either state or national, in order to raise revenue for government purposes, is in a broad sense a government instrumentality, with respect to which neither the *402 property itself before sale, nor its sale by one government, may be taxed by the other. But it does not follow that the same property in the hands of the buyer, or his use or enjoyment of it, or the income he derives from it, is also tax immune. New Brunswick v. United States, 276 U.S. 547; Forbes v. Gracey, 94 U.S. 762; Tucker v. Ferguson, 22 Wall. 527; see Weston v. Charleston, 2 Pet. 449, 468; Veazie Bank v. Fenno, 8 Wall. 533, 547. Theoretically, any tax imposed on the buyer with respect to the purchased property may have some effect on the price, and thus remotely and indirectly affect the selling government. We may assume that if the property is subject to tax after sale, the governmental seller will generally receive a less favorable price than if it were known in advance that the property in the hands of later owners, or even of the buyer alone, could not be taxed.
"But the remote and indirect effects upon the one government of such a non-discriminatory tax by the other have never been considered adequate grounds for thus aiding the one at the expense of the taxing power of the other. See Willcuts v. Bunn, 282 U.S. 216, 231; Educational Films Corp. v. Ward, 282 U.S. 379; Metcalf & Eddy v. Mitchell, 269 U.S. 514, 523-524. This Court has consistently held that where property or any interest in it has completely passed from the government to the purchaser, he can claim no immunity from taxation with respect to it, merely because it was once government owned, or because the sale of it effected some government purpose. New Brunswick v. United States, supra; Forbes v. Gracey, supra; Tucker v. Ferguson, supra: see Gromer v. Standard Dredging Co., 224 U.S. 362, 371; Choctaw, O. & G.R. Co. v. Mackey, 256 U.S. 531, 537; Central Pacific R. Co. v. California, 162 U.S. 91, 125; Railroad Co. v. Peniston, 18 Wall. 5, 35-37; Weston v. Charleston, supra, p. 468.
*403 "Property which has thus passed from either the national or a state government to private ownership becomes a part of the common mass of property and subject to its common burdens. Denial to either government of the power to tax it, or income derived from it, in order to insure some remote and indirect antecedent benefit to the other, would be an encroachment on the sovereign power to tax, not justified by the implied constitutional restriction. See Weston v. Charleston, supra, p. 468."
The doctrine thus announced was not a new one. More than fifty years before, and long before the decision in the Gillespie case, it had been definitely decided in Forbes v. Gracey, 94 U.S. 762, that private mining claims granted by the Government in the public lands of the United States, and the ores and minerals derived from them, are subject to state taxation.
In deciding the Group No. 1 Oil Corp. case, it was not necessary to determine whether the result in that case would have been different if the oil, from the sale of which the taxpayer derived his income, had become his only when severed from the soil, or whether there were other distinguishing features between that case and the Gillespie case. It was enough, there, that, as the taxed income was derived from the lessee's sale of the oil, title to which was, by the lease, vested in him before severance, the case was definitely controlled by precedents whose avowed principles the Court approved. Now, we are concerned with a lease identical with that involved in the Gillespie case, and comparison of it with the Texas lease is unavoidable. If we can find no distinction of substance between the operation and effect of the Texas leases and the Oklahoma leases, the Gillespie case should no longer be followed. That no such distinction can be drawn is obvious.
The leasing by the National Government of Indian oil lands in Oklahoma to private lessees, for the benefit of the *404 Indians, and the leasing by Oklahoma of its school lands in like fashion, for the benefit of the schools of the state, are no more and no less governmental enterprises than the leasing by Texas of its oil lands for the benefit of the state university. Whatever the genesis of the particular public duty which each sovereignty has undertaken to perform, the method chosen and the instruments selected for its performance are the same. In each case there was the exercise of a function concededly governmental, but in each the only result, so far as the lessee was concerned, was the acquisition by him of certain property rights exclusively for his own benefit. In each the lessee was taxed on his profits, derived from his private business in the production and sale of oil and gas, which was his property. It cannot be said that the identical tax, thus levied, has any effect on Oklahoma differing from that on Texas. The fact, if it is a fact, that under the Oklahoma leases the lessees do not acquire ownership of the oil or gas until they have severed it from the soil, but before its sale, while the lessees under the Texas leases acquire it immediately on receipt of their leases, presents no distinguishing feature. All acquire private rights by governmental grant, from the exploitation of which they have derived income which, upon principles consistently applied by this Court, except in the Indian oil lease cases, and reiterated in the Group No. 1 Oil Corp. case, may be taxed as other income is taxed.
Since comparison of the two methods of disposing of state assets reveals only formal differences, this Court must now deal with an irreconcilable conflict in the theories upon which two of its decisions rest. One, the Gillespie case, extends the doctrine of tax immunity, beyond any other case, to income from private business enterprises, merely because the property used in the business was acquired from a sovereign government which applies *405 the proceeds of it to a governmental purpose. The other, and more recent, case, decided by the Court after full consideration of all the arguments now advanced as supporting the Gillespie case, restricted the immunity to the property of the sovereign government itself and to the income which the Government derives from it.
It is plain that if we place emphasis on the orderly administration of justice, rather than on a blind adherence to conflicting precedents, the Gillespie case must be overruled. It is true that for ten years the State of Oklahoma has been deprived, by the decision in that case, of taxes upon the income derived from private business of lessees of Indian lands in that state, but that is no reason why it should continue to be so deprived or why the National Government should now be denied the right to like taxes and at the same time be permitted to tax the income of the lessees under the Texas leases. No interest which could be subserved by so rigid an application of stare decisis, is superior to that of a system of justice based on a considered and consistent application of the Constitution of the United States.
MR. JUSTICE BRANDEIS, MR. JUSTICE ROBERTS, and MR. JUSTICE CARDOZO join in this opinion.
MR. JUSTICE BRANDEIS, dissenting.
Under the rule of Gillespie v. Oklahoma vast private incomes are being given immunity from state and federal taxation. I agree with MR. JUSTICE STONE that that case was wrongly decided and should now be frankly overruled. Merely to construe strictly its doctrine will not adequately protect the public revenues. Compare Jaybird Mining Co. v. Weir, 271 U.S. 609.
Stare decisis is not, like the rule of res judicata, a universal, inexorable command. "The rule of stare decisis, though one tending to consistency and uniformity *406 of decision, is not inflexible. Whether it shall be followed or departed from is a question entirely within the discretion of the court, which is again called upon to consider a question once decided." Hertz v. Woodman, 218 U.S. 205, 212. Stare decisis is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than that it be settled right. Compare National Bank v. Whitney, 103 U.S. 99, 102. This is commonly true even where the error is a matter of serious concern, provided correction can be had by legislation.[1] But in cases involving the Federal *407 Constitution, where correction through legislative action is practically impossible, this Court has often overruled its earlier decisions.[2] The Court bows to the lessons *408 of experience and the force of better reasoning,[3] recognizing that the process of trial and error, so fruitful in the physical sciences, is appropriate also in the judicial function. Compare Brinkerhoff-Faris Trust & Savings *409 Co. v. Hill, 281 U.S. 673, 681. Recently, it overruled several leading cases, when it concluded that the States should not have been permitted to exercise powers of taxation which it had theretofore repeatedly sanctioned.[4] In cases involving the Federal Constitution[5] the position *410 of this Court is unlike that of the highest court of England, where the policy of state decisis was formulated and is strictly applied to all classes of cases.[6] Parliament is free to correct any judicial error; and the remedy may be promptly invoked.
The reasons why this Court should refuse to follow an earlier constitutional decision which it deems erroneous are particularly strong where the question presented is one of applying, as distinguished from what may accurately be called interpreting, the Constitution. In the cases which now come before us there is seldom any dispute as to the interpretation of any provision. The controversy is usually over the application to existing conditions of some well-recognized constitutional limitation.[7] This is strikingly true of cases under the due process clause when the question is whether a statute is unreasonable, arbitrary or capricious; of cases under the equal protection clause when the question is whether there is any reasonable basis for the classification made by a statute; and of cases under the commerce clause when the question is whether an admitted burden laid by a statute upon interstate commerce is so substantial as to be deemed direct. These issues resemble, fundamentally, that of reasonable care in negligence cases, the determination of which is ordinarily left to the verdict of the jury. In every such case the decision, in the first instance, is dependent upon the determination of what in legal parlance is called a fact, as distinguished from the *411 declaration of a rule of law.[8] When the underlying fact has been found, the legal result follows inevitably. The circumstance that the decision of that fact is made by a court, instead of by a jury, should not be allowed to obscure its real character.
The issue presented by the case at bar is of the character of those discussed above. Here, also, the applicable provision of law is beyond dispute. Confessedly, the United States may not, by a tax, interfere substantially with the functions of a State. The question at issue is, whether, as a practical matter, it does so interfere by a statute which includes among the items on which its general income tax is laid, the profits derived by the taxpayer from operating some of the State's school lands under a lease. The question resembles closely that presented and decided in Willcuts v. Bunn, 282 U.S. 216, 230, 231. There, this Court examined the surrounding facts to determine whether "a federal tax on the profits of sales of such securities should be deemed, as a practical matter, to lay such a burden on the exercise of the State's borrowing power as to make it necessary to deny to the Federal Government the constitutional authority to impose the tax." The validity of the tax, it held, depends upon "whether the prospect on the part of the ordinary investor of obtaining profit on the resale of such obligations is so important an element in inducing their acquisition that a federal tax on such profits, in common with profits derived from the sales of other property, constitutes any substantial interference with the functions of state governments." Obviously the matter for determination in Willcuts v. Bunn, although made by the highest court of the land, was, in *412 essence, a matter of fact. Similarly, here, the question whether it would interfere substantially with the functions of the state government to permit the general income tax of the United States to include profits derived from the lease involves primarily the determination of a fact, not the decision of a proposition of law.
The doctrine of res judicata demands that a decision made by the highest court, whether it be a determination of a fact or a declaration of a rule of law, shall be accepted as a final disposition of the particular controversy, even if confessedly wrong. But the decision of the Court, if, in essence, merely the determination of a fact, is not entitled, in later controversies between other parties, to that sanction which, under the policy of stare decisis, is accorded to the decision of a proposition purely of law. For not only may the decision of the fact have been rendered upon an inadequate presentation of then existing conditions, but the conditions may have changed meanwhile. Compare Abie State Bank v. Bryan, 282 U.S. 765, 772. Moreover, the judgment of the Court in the earlier decision may have been influenced by prevailing views as to economic or social policy which have since been abandoned.[9] In cases involving constitutional issues of the character discussed, this Court must, in order to reach sound conclusions, feel free to bring its opinions into agreement with experience and with facts newly ascertained, so that its *413 judicial authority may, as Mr. Chief Justice Taney said, "depend altogether on the force of the reasoning by which it is supported."
MR. JUSTICE STONE and MR. JUSTICE ROBERTS join in this opinion.
NOTES
[1] This Court has, in matters deemed important, occasionally overruled its earlier decisions although correction might have been secured by legislation. See Chicago & Eastern Illinois R. Co. v. Industrial Commission, 284 U.S. 296, overruling Erie R. Co. v. Collins, 253 U.S. 77, and Erie R. Co. v. Szary, 253 U.S. 86; Gleason v. Seaboard Air Line Ry. Co., 278 U.S. 349, 357, in part overruling Friedlander v. Texas & Pacific Ry. Co., 130 U.S. 416; Lee v. Chesapeake & Ohio Ry. Co., 260 U.S. 653, 659, overruling Ex parte Wisner, 203 U.S. 449, and qualifying In re Moore, 209 U.S. 490; Boston Store v. American Graphophone Co., 246 U.S. 8, 25, and Motion Picture Co. v. Universal Film Co., 243 U.S. 502, 518, overruling Henry v. A.B. Dick Co., 224 U.S. 1; Rosen v. United States, 245 U.S. 467, 470, overruling United States v. Reid, 12 How. 361 (compare Greer v. United States, 245 U.S. 559, 561; Jin Fuey Moy v. United States, 254 U.S. 189, 195; Olmstead v. United States, 277 U.S. 438, 466); Roberts v. Lewis, 153 U.S. 367, 377, overruling Giles v. Little, 104 U.S. 291; Kountze v. Omaha Hotel Co., 107 U.S. 378, 387, overruling Stafford v. Union Bank of Louisiana, 16 How. 135; United States v. Phelps, 107 U.S. 320, 323, overruling Shelton v. The Collector, 5 Wall. 113, 118; Hornbuckle v. Toombs, 18 Wall. 648, 652, 653, overruling Orchard v. Hughes, 1 Wall. 77, Noonan v. Lee, 2 Black 499, and Dunphy v. Kleinsmith, 11 Wall. 610; Mason v. Eldred, 6 Wall. 231, 238, in effect overruling Sheehy v. Mandeville, 6 Cranch 253; Gazzam v. Phillips' Lessee, 20 How. 372, 377, 378, overruling Brown's Lessee v. Clements, 3 How. 650; Vidal v. Girard's Executors. 2 How. 127, qualifying Baptist Assn. v. Hart's Executor, 4 Wheat. 1; Gordon v. Ogden, 3 Pet. 33, 34, overruling Wilson v. Daniel, 3 Dall. 401; compare Brenham v. German American Bank, 144 U.S. 173, 187, overruling Rogers v. Burlington, 3 Wall. 654 and Mitchell v. Burlingham, 4 Wall. 270; Hudson v. Guestier, 6 Cranch 281, 285, overruling Himely v. Rose, 4 Cranch 241, 284. See also Fairfield v. County of Gallatin, 100 U.S. 47, 54, 55, and cases cited.
[2] Besides cases in note 4, see East Ohio Gas Co. v. Tax Commission, 283 U.S. 465, 472, overruling Pennsylvania Gas Co. v. Public Service Commission, 252 U.S. 23; Terral v. Burke Construction Co., 257 U.S. 529, 533, overruling Doyle v. Continental Insurance Co., 94 U.S. 535, and Security Mutual Life Insurance Co. v. Prewitt, 202 U.S. 246; Pennsylvania R. Co. v. Towers, 245 U.S. 6, 17, in part overruling Lake Shore & Michigan Southern Ry. Co. v. Smith, 173 U.S. 684; United States v. Nice, 241 U.S. 591, 601, overruling Matter of Heff, 197 U.S. 488; Garland v. Washington, 232 U.S. 642, 646, 647, overruling Crain v. United States, 162 U.S. 625; Pollock v. Farmers' Loan & Trust Co., 158 U.S. 601, in effect overruling Hylton v. United States, 3 Dall. 171; Leisy v. Hardin, 135 U.S. 100, 118, overruling Peirce v. New Hampshire, 5 How. 504; Leloup v. Port of Mobile, 127 U.S. 640, 647, overruling Osborne v. Mobile, 16 Wall. 479; Morgan v. United States, 113 U.S. 476, 496, overruling Texas v. White, 7 Wall. 700; Legal Tender Cases, 12 Wall. 457, 553, overruling Hepburn v. Griswold, 8 Wall. 603; The Belfast, 7 Wall. 624, 641, overruling in part Allen v. Newberry, 21 How. 544; The Genesee Chief, 12 How. 443, 456, overruling The Thomas Jefferson, 10 Wheat. 428, and The Orleans v. Phoebus, 11 Pet. 175; Louisville, Cincinnati & Charleston R. Co. v. Letson, 2 How. 497, 554-556, overruling Commercial & Rail Road Bank v. Slocomb, 14 Pet. 60, and other cases, and qualifying Bank of the United States v. Deveaux, 5 Cranch 61; compare Marshall v. Baltimore & Ohio R. Co., 16 How. 314, 325, 326, in turn qualifying the Letson case, supra. Compare Helson v. Kentucky, 279 U.S. 245, 251, qualifying Crandall v. Nevada, 6 Wall. 35; Sonneborn Bros. v. Cureton, 262 U.S. 506, qualifying Texas Co. v. Brown, 258 U.S. 466; Bowman v. Continental Oil Co., 256 U.S. 642, and Standard Oil Co. v. Graves, 249 U.S. 389; Union Tank Line Co. v. Wright, 249 U.S. 275, 283, 284, qualifying Pullman Palace Car Co. v. Pennsylvania, 141 U.S. 18; Wheeler v. Sohmer, 233 U.S. 434, 440, qualifying Buck v. Beach, 206 U.S. 392 (compare Baldwin v. Missouri, 281 U.S. 586); Home Telephone & Telegraph Co. v. Los Angeles, 227 U.S. 278, 294, qualifying Barney v. New York, 193 U.S. 430; Galveston, H. & S.A. Ry. Co. v. Texas, 210 U.S. 217, 226, qualifying Maine v. Grand Trunk Ry. Co., 142 U.S. 217; In re Chapman, 166 U.S. 661, 670, qualifying Runkle v. United States, 122 U.S. 543, 555; New Orleans City & Lake R. Co. v. New Orleans, 143 U.S. 192, 195, qualifying Gordon v. Tax Appeal Court, 3 How. 133; Philadelphia S.S. Co. v. Pennsylvania, 122 U.S. 326, 342, qualifying State Tax on Railway Gross Receipts, 15 Wall. 284; Wabash, St. Louis & Pacific Ry. Co. v. Illinois, 118 U.S. 557, 568, 569, qualifying Peik v. Chicago & Northwestern Ry. Co., 94 U.S. 164; Kilbourn v. Thompson, 103 U.S. 168, 196-200, qualifying Anderson v. Dunn, 6 Wheat. 204. See also discussion of New York v. Miln, 11 Pet. 102, in Passenger Cases, 7 How. 283; that of Ficklen v. Shelby County Taxing District, 145 U.S. 1, in Crew Levick Co. v. Pennsylvania, 245 U.S. 292, 296, and in Texas Transport & Terminal Co. v. New Orleans, 264 U.S. 150, 153, 154; that of Gulf, Colorado & Santa Fe Ry. Co. v. Texas, 204 U.S. 403, in Baltimore & Ohio Southwestern R. Co. v. Settle, 260 U.S. 166, 173.

Movement in constitutional interpretation and application  often involving no less striking departures from doctrines previously established  takes place also without specific overruling or qualification of the earlier cases. Compare, for example, Allgeyer v. Louisiana, 165 U.S. 578, with The Slaughter House Cases, 16 Wall. 36; Tyson v. Banton, 273 U.S. 418, with Munn v. Illinois, 94 U.S. 113; Muller v. Oregon, 208 U.S. 412, and Bunting v. Oregon, 243 U.S. 426, with Lochner v. New York, 178 U.S. 45.
[3] Compare Taney, C.J., in The Passenger Cases, 7 How. 283, 470: "After such opinions, judicially delivered, I had supposed that question to be settled, so far as any question upon the construction of the Constitution ought to be regarded as closed by the decision of this court. I do not, however, object to the revision of it, and am quite willing that it be regarded hereafter as the law of this court, that its opinion upon the construction of the Constitution is always open to discussion when it is supposed to have been founded in error, and that its judicial authority should hereafter depend altogether on the force of the reasoning by which it is supported."

See also Miller, J., dissenting, in Washington University v. Rouse, 8 Wall. 439, 444: "With as full respect for the authority of former decisions, as belongs, from teaching and habit, to judges trained in the common-law system of jurisprudence, we think that there may be questions touching the powers of legislative bodies, which can never be finally closed by the decisions of a court. . . ."
Compare Field, J., in Barden v. Northern Pacific R. Co., 154 U.S. 288, 322: "It is more important that the court should be right upon later and more elaborate consideration of the cases than consistent with previous declarations. Those doctrines only will eventually stand which bear the strictest examination and the test of experience."
[4] See Alpha Cement Co. v. Massachusetts, 268 U.S. 203, 218, overruling Baltic Mining Co. v. Massachusetts, 231 U.S. 68; Farmers Loan & Trust Co. v. Minnesota, 280 U.S. 204, 209, overruling Blackstone v. Miller, 188 U.S. 189. See also Baldwin v. Missouri, 281 U.S. 586, 591; Beidler v. South Carolina Tax Commission, 282 U.S. 1, 8; First National Bank v. Maine, 284 U.S. 312. During the twenty-seven years preceding the decision of Farmers Loan & Trust Co. v. Minnesota, Blackstone v. Miller had been cited with approval in this Court fifteen times. Compare Educational Films Corp. v. Ward, 282 U.S. 379, 392-394, and Pacific Co. v. Johnson, decided today, post, p. 480, qualifying Macallen Co. v. Massachusetts, 279 U.S. 620.
[5] The policy of stare decisis may be more appropriately applied to constitutional questions arising under the fundamental laws of those States whose constitutions may be easily amended. The action following the decision in Ives v. South Buffalo Ry. Co., 201 N.Y. 271, shows how promptly a state constitution may be amended to correct an important decision deemed wrong. See Frankfurter and Landis, "The Business of the Supreme Court," pp. 193-198. In only two instances  the Eleventh and the Sixteenth Amendments  has the process of constitutional amendment been successfully resorted to, to nullify decisions of this Court. See Chisholm v. Georgia, 2 Dall. 419; Pollock v. Farmers' Loan & Trust Co., 158 U.S. 601. It required eighteen years of agitation after the decision in the Pollock case to secure the Sixteenth Amendment.
[6] Compare London Street Tramways Co. v. London County Council, (1898) A.C. 375; Stuart v. Bank of Montreal, 41 Sup. Ct. Can. 516. See Arthur L. Goodhart, "Case Law in England and America," 15 Cornell Law Quarterly, 173, 188, 193; E.K. Williams, "Stare Decisis," 4 Canadian Bar Review 289.
[7] See Frankfurter and Landis, "The Business of the Supreme Court," pp. 307-318.
[8] Arthur W. Machen, Jr., "The Elasticity of the Constitution," 14 Harv. L. Rev. 273; Henry Wolf Bikle, "Judicial Determination of Questions of Fact Affecting the Constitutional Validity of Legislative Action," 38 Harv. L. Rev. 6.
[9] Roscoe Pound, "The Theory of Judicial Decision," 36 Harv. Law Rev. (1923), 641, 651; Ray A. Brown, "Due Process of Law, Police Power, and the Supreme Court," 40 Harv. L. Rev. (1927), 943, 961, 967; "Police Power  Legislation for Health and Personal Safety," 42 Harv. L. Rev. (1929), 866, 867, 872; Percy H. Winfield, "Public Policy in the English Common Law," 42 Harv. L. Rev. (1928), 76, 101, 102. See Charles Warren, "The Supreme Court in United States History," Vol. III, pp. 470, 471.