### SOUTHERN PAC. CO. v. CORBETT et al.
### No. 4055–R.

District Court, N. D. California, S. D.
May 3, 1938.

194

Guy V. Shoup and Harry H. McElroy, both of San Francisco, Cal., for Southern Pac. Co.

U. S. Webb, Atty. Gen., and H. H. Linney and James J. Arditto, Deputy Attys. Gen., for defendants.

Before DENMAN, Circuit Judge, and ST. SURE and ROCHE, District Judges.

DENMAN, Circuit Judge.

This case has been submitted under an agreed statement of facts which sustains the pertinent allegations of the bill discussed in our opinion denying the motion for its dismissal. 20 F.Supp. 940. The railway has established that the storage use of the railway materials, solely for its current repairs and renewals and necessary extensions of its intermingled interstate and intrastate enterprise and plant, and without which usage the railway would stop running, is a use in interstate commerce. Hence a tax upon such use is a tax affecting an interstate commerce use—that is, affecting the federal as distinguished from any state function performed by the railway as a public carrier. At the hearing we invited further argument and briefing, but the able presentation on behalf of the state has not answered the question, "In what enterprise other than the intercommingled interstate and intrastate railroading is this use in storage for current repairs and replacements, without which the railroad could not operate?" Such storage use for current installation is use in interstate commerce in any realistic sense understood by industrialists and merchants (20 F.Supp. 940, 943), and could be regarded otherwise only by the application of some "artificial standard" prohibited by Gregg Dyeing Co. v. Query, 286 U.S. 472, 480, 52 S.Ct. 631, 634, 76 L.Ed. 1232, 84 A.L.R. 831.

However, since our denial of the motion to dismiss, the Supreme Court has decided three cases dealing with the boundaries of state and federal taxation. Two of them, Western Live Stock v. Bureau of Revenue, 58 S.Ct. 546, 82 L.Ed. ——, and Coverdale v. Arkansas-Louisiana Pipe Line Co., 58 S.

Ct. 736, 82 L.Ed. ——, decided April 4, 1938, significantly expand the area of the states. A third, Helvering v. Mountain Producers Corporation, 58 S.Ct. 623, 82 L.Ed. ——, explicitly overrules long-established concepts determining the respective taxing areas of both governments.

It is suggested by the state's officers that since the thirteenth paragraph of that decision states: " * * * In the light of the expanding needs of the state and nation, the inquiry has been pressed whether this conclusion has adequate basis; whether in a case where the tax is not laid upon the leases as such, or upon the government's property or interest, but is imposed upon the gains of the lessee, like that laid upon others engaged in similar business enterprises, there is in truth such a direct and substantial interference with the performance of the government's obligation as to require immunity for the lessee's income," Helvering v. Mountain Producers Corporation, 58 S.Ct. 623, 626, 82 L.Ed. ——, we may be required to reconsider our decision with a view to the expanding needs for revenue of the state of California, and they offer the enactment of the use tax itself as evidence of such need.

In the present emergency of dependent unemployed, California's need for revenue is of sufficient pressure to produce incandescence, but the emitted light does not show where the path of such a principle of determination will lead us.

What light we have on various interstate railways, performing a national public service as important in the body politic as the circulation of blood in the individual, seems to disclose correspondingly "expanding needs" for revenue to meet their expanding pay rolls and interest on debt and, here, expanding taxes. Indeed, so pressing are their needs that only by the expanding use of federal funds is their federally regulated function prevented from transfer to federal courts and federal receivers. Already, for many railways, it has been transferred.

We cannot believe that the language of the Mountain Producers Case must be interpreted as imposing on us, first, a determination of the need for state taxation and, if found, second, a reconsideration of our decision on the denial of the motion to dismiss with a view to a reversal of our holding there. Such a criterion would suggest another review and other overrulings

if returning prosperity contracts rather than expands the state's need.

We prefer the alternative view of the state's brief that, just as the emergency of the depression and high rentals in the so-called Rent Cases, Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865, 16 A.L.R. 165; Marcus Brown Holding Co. v. Feldman, 256 U.S. 170, 41 S.Ct. 465, 65 L. Ed. 877, and Edgar A. Levy Leasing Co. v. Siegel, 258 U.S. 242, 42 S.Ct. 289, 66 L. Ed. 595, and also in the much later case of Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481, induced the Congress and the judiciary to the exploration of hitherto unused constitutional powers, so now the urgency of the more recently expanding functions of government in aid of the economic and social needs of the average man, also made poignantly clear by the world depression, requires both Legislatures and courts to review the border line between state and federal taxing areas, as that was decided in cases when no such economic and social conditions existed or had been exposed.

Prior decisions considered in the overrulings by the Mountain Producers Case present a more definite guide for determining its effect on the decision of this case. Among the cases considered is Indian Oil Co. v. Oklahoma, 240 U.S. 522, 36 S.Ct. 453, 60 L.Ed. 779, holding invalid as an unconstitutional burden on a governmental function a tax on Indian land leases owned by the taxpayer. Here the tax was on the property itself of the taxpayer.

In three other cases, *the income of the taxpayer* from *his* leases is held not taxable. In Choctaw & Gulf R. R. Co. v. Harrison, 235 U.S. 292, 35 S.Ct. 27, 59 L.Ed. 234, was held invalid a state tax on the lessee of a mine from the trustee of the mine for Choctaw and Chickasaw Indian tribes, wards of the federal government, based upon his gross sales of his coal. The court held (page 29) that the lessee was "the instrumentality through which this [governmental] obligation is being carried into effect. Such an agency cannot be subjected to an occupation or privilege tax by a state."

In Gillespie v. Oklahoma, 257 U.S. 501, 42 S.Ct. 171, 66 L.Ed. 338, the *state* tax on the income of leases owned by the taxpayer was held invalid on the same reasoning, as was the federal tax on the income of the owner of state leases in Burnet v.

Coronado Oil & Gas Co., 285 U.S. 393, 52 S.Ct. 443, 76 L.Ed. 815.

In all these cases the tax on the taxpayer's property or his income incidental to its ownership is regarded as potentially destructive of the governmental function served by the taxpayer in the exercise of its ownership.

In the Mountain Producers Case the tax was upon the income from the leases, and the court states the overruling principle to be (page 628): "* * * And, where it merely appears that one operating under a government contract or lease is subjected to a tax with respect to his profits on the same basis as others who are engaged in similar businesses, there is no sufficient ground for holding that the effect upon the government is other than indirect and remote. We are convinced that the rulings in Gillespie v. Oklahoma, [257 U.S. 501, 42 S.Ct. 171, 66 L.Ed. 338], supra, and Burnet v. Coronado Oil & Gas Co. [285 U.S. 393, 52 S.Ct. 443, 76 L.Ed. 815], supra, are out of harmony with correct principle and accordingly they should be, and they now are, overruled." Helvering v. Mountain Producers Corporation, supra, 58 S.Ct. 623, 82 L.Ed. ——.

However, preceding this sentence regarding taxation on such *income* is another stating the broader principle permitting taxation on *property* of private persons, formerly regarded as having the character of governmental agents because of their leases or contracts with the government. This statement is so significantly joined by the word "and" to the succeeding above-quoted sentence, that we are constrained to believe it to be the broader ratio decidendi of the case. The preceding sentence is (58 S.Ct. 623, 627, 82 L.Ed. ——): "These decisions in a variety of applications enforce what we deem to be the controlling view—that immunity from nondiscriminatory taxation sought by a private person for *his property* or gains because he is engaged in operations under a government contract or lease cannot be supported by merely theoretical conceptions of interference with the functions of government. Regard must be had to substance and direct effects." (Italics supplied.)

If, then, the private person dealing with the federal government with reference to his property is subject to state taxation, an occupation tax on that person in the *use* of *his* property would seem equally valid.

If this be so, the principle established is inconsistent with that controlling in Graves v. Texas Co., 298 U.S. 393, 401, 56 S.Ct. 818, 822, 80 L.Ed. 1236, cited by the railway as controlling here. There a contractor agreed to sell gasoline to the government. It was *his* property until delivered to the government. Prior to delivery it had to be stored and withdrawn from storage. He was taxed by the state of Alabama for this use of storage and withdrawal while still his property.

The court in the Graves Case states that this tax increases the government's cost by the amount of the tax levy. However, it seems clear that, because the increased cost is so measurable, the principle is no different from the sales tax on the coal in the Choctaw Case. It is just as *certain* that the government will receive less for the coal lease as that it will pay more for the gasoline. One is no more direct than the other. Both are levied on the owners of gasoline and coal while the government has no title in either.

Shortly before the Mountain Producers decision was that in Western Live Stock v. Bureau of Revenue, 58 S.Ct. 546, 82 L. Ed. ——. There a nondiscriminatory tax on gross receipts from the sale of advertising in a periodical printed in one state and circulated in that and in other states is held valid as on an intrastate activity. The fact that it increases the cost of producing advertising, which has its value because of its interstate circulation, is not controlling.

The latest of these tax cases, decided April 4, 1938, follows normally the trend of these decisions. In Coverdale v. Arkansas-Louisiana Pipe Line Co., 58 S.Ct. 736, 82 L.Ed. ——, the party taxed was engaged in the interstate delivery of petroleum gas through a pipe line. It maintained several pumps in the state of Louisiana; the power from which traveled inter state with the gas it moved. The state levied an occupation tax on the use of the pumps, measured by the amount of power going into an intermingled intra and interstate distribution. The court held that because (1) the tax was nondiscriminatory and (2) the pump itself was stationary within the state and itself did not move with the power it created, the tax on its use did not have a *direct* effect on interstate commerce and hence was a valid exercise of the state's right to tax.

When California's use tax on the railroad is considered in connection with the principles established in the preceding cases, we are compelled to the conclusion that the reasoning on which we distinguished it from the cases of Nashville, etc., Ry. Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191, and Edelman v. Boeing Air Transport, 289 U.S. 249, 53 S.Ct. 591, 77 L.Ed. 1155, is not controlling. It is true that the standby material here stored for the necessary maintenance of a great interstate railway is *dedicated* to an interstate use, but so are the pumps in the Coverdale Case. Railways could not run unless their spare parts and maintenance supplies were used in the storage from which they were currently drawn, but neither could the gas and oil be driven in interstate commerce unless the owner used the pumps.

For the purposes of this case the dividing line is the same as in the Nashville and Edelman Cases, even though in those cases there was no proof that the fuel was dedicated to an exclusive use to create power in interstate transportation. It is that the storage use and withdrawal use are prior to the actual installation of the parts and rails in the locomotive and cars and in the roadbed. Until then the increased cost, although it is paid by the passengers and freight owners, is an *"indirect"* burden on interstate commerce. Did not the Coverdale Case seek to distinguish between the Nashville and Edelman Cases and Helson v. Kentucky, 279 U.S. 345, 49 S.Ct. 279, 73 L.Ed. 683, we should be inclined to hold that the latter case was overruled and, though a direct burden, the tax was as valid as the direct ad valorem tax on the railroad's property itself. In logic, as pointed out by Mr. Justice Stone in his concurrence in the Helson Case, the one is as justifiable a method of collecting from the railway what it owes the state government for its services in state governmental protection, as is the other.

We find the facts to be as stipulated and agreed by the parties. From those facts we conclude that the threatened enforcement of the California Use Tax Act, St.Cal.1935, p. 1297, will not impose a direct or undue burden on plaintiff's interstate commerce business.

The permanent injunction is denied, and the bill dismissed.