NO. 07-09-0115-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

SEPTEMBER 16, 2009
                                       ______________________________

JAMES WARREN BRIGHT, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 16,336; HONORABLE KELLY G. MOORE, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
OPINION ON JURISDICTION
          Appellant James Warren Bright filed notice of appeal from an order of the trial court
denying his motion for appointment of counsel in a proceeding for forensic DNA testing
pursuant to Chapter 64 of the Code of Criminal Procedure.


 The record does not indicate
appellant has filed a motion for DNA testing supported by affidavit. See Tex. Code Crim.
Proc. art. 64.01(a) (Vernon Supp. 2008). Thus we questioned whether our appellate
jurisdiction extends to the immediate appeal of an order denying appointment of counsel
in a Chapter 64 proceeding. On our own motion, we abated the case to assess our
jurisdiction.
                                          Article 64.01 provides that a convicted person may submit a motion to the convicting
court for forensic DNA testing of evidence containing biological material. Tex. Code Crim.
Proc. Ann. art. 64.01(a) (Vernon Supp. 2008). The motion must be accompanied by an
affidavit, sworn to by the convicted person, containing statements of fact in support of the
motion. Id. The statute provides the court shall appoint counsel if the convicted person
informs the court of a wish to submit a motion under Chapter 64, and the court finds
reasonable grounds for a motion to be filed and determines the person is indigent. Tex.
Code Crim. Proc. Ann. art. 64.01(c) (Vernon Supp. 2008).
          Article 64.05 concerns appeals. As originally enacted, article 64.05 in pertinent part
provided, “[a]n appeal of a finding under Article 64.03 [denial of DNA testing] or 64.04
[finding of trial court on testing of DNA] is to a court of appeals . . . .” Act of April 3, 2001,
77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Laws 2, 4 amended by Act of May 9, 2003, 78th
Leg., R.S., ch. 13, § 5, 2003 Tex. Gen. Laws 16, 16-17 (current version at Tex. Code Crim.
Proc. Ann. art. 64.05 (Vernon 2006)). That version of article 64.05 gave no right of appeal
of a trial court’s failure to appoint counsel. Neveu v. Culver, 105 S.W.3d 641, 643
(Tex.Crim.App. 2003). Cf. Fry v. State, 112 S.W.3d 611, 613 (Tex.App.–Fort Worth 2003,
pet. refused) (under former version of article 64.05, court of appeals lacked jurisdiction to
review trial court’s interlocutory denial of appellant’s request for appointment of counsel). 
          In 2003, article 64.05 was amended to its present form which in pertinent part
provides, “[a]n appeal under this chapter is to a court of appeals in the same manner as
an appeal of any other criminal matter, . . . .” Act of May 9, 2003, 78th Leg., R.S., ch. 13,
§ 5, 2003 Tex. Gen. Laws 16, 16-17 (current version at Tex. Code Crim. Proc. Ann. art.
64.05 (Vernon 2006)). 
          In cases subject to the amended version of article 64.05, it appears generally
accepted that an order denying appointment of counsel under article 64.01(c) may be
challenged on appeal. See James v. State, 196 S.W.3d 847, 849 (Tex.App.–Texarkana
2006, no pet.) (trial court denied appellant’s motion for DNA testing and on review
appellate court held an appeal lies from an order denying article 64.01(c) motion for
appointment of counsel); Lewis v. State, 191 S.W.3d at 225, 227-28 (Tex.App.–San
Antonio 2005, pet. refused) (denial of request for counsel raised in appeal from denial of
motion for DNA testing); cf. Conlin v. State, 221 S.W.3d 907, 908 (Tex.App.–Beaumont
2007, no pet.) (right of appeal noted in dicta). 
          Important to the more narrow inquiry here, at least three courts have reached the
merits of an immediate appeal of an order denying appointment of counsel under article
64.01(c). See Atkins v. State, 262 S.W.3d 413, 415 (Tex.App.–Houston [14th Dist.] 2008,
pet. refused) (immediate appeal of order denying counsel under article 64.01(c) not
impermissible interlocutory appeal); In re Franklin, No. 03-07-00563-CR, 2008 WL
2468712, at *1 (Tex.App.–Austin June 19, 2008, no pet.) (mem. op., not designated for
publication) (appeal of order denying request for appointed counsel allowed before motion
for testing was filed); In re Bowman, No. 03-07-00418-CR, 2007 WL 4269842, at *1
(Tex.App.–Austin Dec. 5, 2007, no pet.) (mem. op., not designated for publication) (same);
Spruce v. State, No. 06-05-00077-CR, 2005 WL 1959121, at *1-2 (Tex.App.–Texarkana
August 17, 2005, no pet.) (mem. op., not designated for publication) (merits of order
denying appointment of counsel disposed of on immediate appeal without discussion of
jurisdiction). Conversely, in Conlin, a divided court found an order denying appointment
of counsel was an unappealable interlocutory order. 221 S.W.3d at 908. 
          Although it is unclear to us that the Legislature intended, by its 2003 amendment
of article 64.05, to authorize immediate appeals of the denial of counsel requested under
article 64.01(c), we will join the majority of our sister courts who have considered the
question, and will permit such appeals. In doing so, we find applicable Justice Brandeis’s
oft-quoted observation that “in most matters it is more important that the applicable rule of
law be settled than that it be settled right.” Burnet v. Coronado Oil & Gas Co., 285 U.S.
393, 406, 52 S. Ct. 443, 447, 76 L. Ed. 815, 1932 C.B. 265, 1932-1 C.B. 265 (1932)
(Brandeis, J., dissenting).
          Finding we have jurisdiction over the present appeal, we dissolve the abatement. 
 
                                                                Per Curiam
 
Publish.



ation upon HGM was attempted via the United States certified mail. As
previously mentioned, the addressee for the citation was Dana White, the corporation's
registered agent. However, Ms. White did not receive the mailing. Rather, it was delivered
to Jack Danley, who signed the return receipt on September 5, 1995. Several years
passed before HGM moved, on November 2, 1998, to quash service. Over two and one-half years later, that is, on June 22, 2001, the motion came for hearing. Though the trial
court opined, at the hearing, that it intended to grant the motion, an order effectuating that
intent was not signed until July 12, 2002, that is, over a year later. As a result of the order,
the Ramirezes attempt at service was not only rendered invalid but of no effect. Wilson
v. Dunn, supra; Webb v. Oberkampf Supply of Lubbock, Inc., supra. In other words, the
Ramirezes never perfected service upon HGM during the approximately nine years
between the date the injury occurred and the trial court signed its order quashing service,
five years between the date of injury and the time HGM informed them of a defect in
service via its motion to quash, and three years between the date suit was filed and HGM
moved to quash service. Thus, we conclude, as a matter of law, that the two-year period
of limitations expired long before HGM moved to quash, unless, of course, evidence of
record appears from which it can be reasonably inferred that the Ramirezes' delay was
reasonably excusable and they used diligence in attempting to perfect service.

 As to the matter of diligence, the Ramirezes sought to justify the absence of citation
by uttering several excuses. The first involved their contention that service was attempted
and Danley received the citation via certified mail within six days of filing suit. Next, they
asserted that "[c]ontact was made with the District Clerk's office to confirm service upon
the Defendants in September, 1995, and the district clerk advised that all . . . had been
served with citation." Also mentioned was that "[c]ounsel for the plaintiffs knew . . . Danley
was involved in the operation of . . . HGM . . ."; though when they so knew went
unmentioned. 

 Next, counsel for the Ramirezes attested that 1) he "was advised by the District
Clerk that Certified Mail citations were mailed to the addresses shown and that they were
signed for and returned" (though counsel did not say that anyone either asked for or was
told of the name of the person who signed for the mail despite the fact that the letters were
addressed to a particular individual), 2) he "should be entitled to reasonably rely upon the
. . . Post Office delivering mail to the address shown on the mail," 3) he "should also be
able to reasonably assume that Jack Danley had authority to receive mail on behalf of
Dana T. White or he would not have signed for the Certified Mail," 4) he met with Danley
on the morning of June 1, 2001, and was told by Danley that "he had been the Chief
Executive Officer for Consolidated HGM . . . and a personal friend of . . . White," 5) "HGM
ceased to operate" in 1991 but maintained the use of the address to which the citation was
sent, according to Danley, 6) mail would be delivered to HGM at the address and Danley
would "sign for mail addressed to . . . White and put it in a brown box . . . for White to pick
up," according to Danley, 7) White told Danley to accept her mail and never told him to
stop signing for it, according to Danley, 8) Danley accepted other certified mailing because
White "wanted him to," according to Danley, 9) counsel believed "Danley was authorized
by . . . White to receive certified mail addressed to . . . White, as agent for . . . HGM," 10)
White "must have had notice of the lawsuit" since HGM moved to quash service, 11)
counsel "had no reason to believe that . . . Danley lacked authority to accept mail
addressed to . . . White, until the motion to quash citation was filed," and 12) "Plaintiffs and
their counsel should be able to assume, as reasonable people, that when someone signs
for certified mail addressed to another person, that the person signing has authority to
accept same." (5) 

 It is important to place the foregoing summary judgment evidence in its correct
perspective. Again, the only grounds which we can consider in assessing whether to
reverse the summary judgment are those "expressly" presented in the motion and any
answers or responses to it. Tex. R. Civ. P. 166a(c). Furthermore, HGM did not expressly
raise the issue of "implied agency" in its motion for summary judgment. Nor did the
Ramirezes expressly do so in their response to the motion. So, the proper perspective of
the evidence does not involve whether an "implied agency" existed. Rather, we must view
it from the perspective expressly mentioned in the summary judgment response, that being
whether a reasonable person was entitled to believe that HGM was served with citation. 
In other words, the Ramirezes are limited to arguing that their delay in perfecting service
was reasonably excusable since they believed Danley was the agent of White or HGM. 
The excuse was and is of no effect, however. Furthermore, it affirmatively established a
lack of reasonable diligence on their part. See Keeton v. Carrasco, 53 S.W.3d 13, 18 (Tex.
App.--San Antonio 2001, pet. denied) (stating that a lack of diligence can be found even
in the face of an offered explanation if that explanation affirmatively established a lack of
reasonable diligence). 

 First, the onus of assuring that service was properly made upon HGM was that of
the Ramirezes. Primate Constr., Inc. v. Silver, supra; Gonzalez v. Phoenix Frozen Foods,
Inc., supra. For instance, relying upon the representations of a trial court about the status
or validity of service does not otherwise justify a want of diligence. Perry v. Kroger Stores,
741 S.W.2d 533, 536 (Tex. App.--Dallas 1987, no writ). The same is true about
representations of a district clerk. Relying on them does not constitute reasonable
justification for neglecting to perfect service of citation. Id.; Reynolds v. Alcorn, 601 S.W.2d
at 788. So, that counsel for the Ramirezes or someone acting for him may have phoned
the district clerk and heard from that official that service had been completed does not
justify their failure to serve HGM. (6) And, this seems especially apropos here. Several years
passed before HGM appeared in the case. The lapse of such period of time without the
defendant doing anything should, at the very least, arouse curiosity. Yet, there exists a
dearth of evidence explaining what, if anything, the Ramirezes did to investigate the delay. 
Indeed, their first attempt to act upon the delay came three years after service was
allegedly perfected, that is, when they informed the court of their desire for a default
judgment against HGM. 

 Nor can we agree with the proposition that a reasonable litigant and his attorney
would or could simply assume that someone other than the addressee of a certified mailing
who signs for the missive has the authority to accept it simply because he signed for it. 
This proposition runs contrary to precedent holding that service of citation is not perfected
by certified mail when someone other than the actual addressee signs for the document. 
See e.g., Pharmakinetics Lab., Inc. v. Katz, 717 S.W.2d at 706. To be diligent, one who
realizes that someone other than the addressee signed for the delivery must, at the very
least, investigate the situation or the extent of the recipient's authority. In that regard,
about 69 months lapsed between the time Danley received the certified mailing and the
Ramirezes contacted him about the extent of his authority, if any. And, for the last 30 of
those 69 months, they undoubtedly knew of the potential defect in service since HGM had
filed its motion to quash. 

 Nor can we say that because Danley was once the chief executive officer of HGM,
a reasonable person could assume that he was entitled to accept service of citation for the
corporation. At the very least, the evidence of record illustrates he ceased holding that
post about two years before suit was filed. One cannot infer that simply because an
individual at one time acted on behalf of some company he continues to have the authority
to do so years later. See Carnell v. Kinser, 196 S.W.2d 941, 943 (Tex. Civ. App.--Amarillo
1946, writ ref'd) (stating that the mere fact that a person recognizes another as his agent
or ratifies his acts at one time and with regard to one transaction neither implies that he is
authorized generally to act as agent nor carries the implication that he has specific
authority at another time). 

 Finally, that garnered from Danley as a result of his conversation with the
Ramirezes' attorney is of little benefit to them. This is so because by the time Danley
supposedly told them he often received mail for and acted pursuant to White's request, 69
months had lapsed since the time service was attempted. In other words, they could not
rely on Danley's comments to explain their conduct since those comments had yet to be
uttered. Simply put, one cannot rely on words no one has said. 

 In sum, the excuses proffered by the Ramirezes and their counsel to justify their
failure to serve HGM with citation are unreasonable, as a matter of law. Furthermore,
those excuses also evince a want of diligence, as a matter of law. A reasonable litigant
does not wait months or years to investigate circumstances that may negate his recovery
when the law demands diligence. Accordingly, we hold that the trial court did not err by
granting HGM summary judgment. 

 Having overruled issues one and five relieves us from having to address issues two,
three and four. They were either encompassed in the ones addressed or rendered moot
by our decisions viz issues one and five. Therefore, we affirm the summary judgment.


 Brian Quinn

 Justice
1. Below, the Ramirezes attempted to defeat the motion to quash by arguing that service was not
defective since Danley was the "implied agent" of HGM and Dana White. Yet, on appeal, the theory of
"implied agency" was not invoked by the Ramirezes in effort to reverse the trial court's decision regarding the
motion to quash. Instead, they raised the theory in effort to reverse the summary judgment. That is, they
believe the trial court should not have granted the summary judgment because they presented evidence
creating a material issue of fact regarding whether Danley was this implied agent. So, for purposes of this
appeal, we do not assess the effect, if any, of the Ramirezes' agency theory upon the decision to grant the
motion to quash service. 
2. As previously mentioned, the Ramirezes also argue that questions of material fact existed regarding
whether Danley was the "implied agent" of HGM and White, and because of that, summary judgment was
improper. This contention was asserted in their reply brief and exemplifies an instance wherein they confuse
what was litigated via the motion to quash and via the motion for summary judgment. As we stated in footnote
one supra, the trial court adjudicated the agency matter when it entertained the motion to quash. One need
only read the transcript of the hearing upon the motion to quash and Ramirezes' response to the motion for
summary judgment to see that this is true. In the former, the trial judge was recorded saying ". . . I don't think
he's anywhere near an implied agent in this particular case." In the latter, the Ramirezes assert that "[o]n June
22, 2001, [the trial] court granted the Defendant's Motion to Quash the Certified Mail citation in this case,
finding that . . . Danley was not an implied agent to accept service of process . . . ." (Emphasis added). 
Moreover, the only ground upon which the Ramirezes sought to avoid summary judgment below
encompassed their diligence and reasonableness in perfecting service. Nowhere in their response did they
purport to reopen the agency question. So, because neither HGM nor the Ramirezes sought to relitigate the
matter of agency as part of the summary judgment proceeding, that ground cannot be invoked as a basis for
reversing the summary judgment. Tex. R. Civ. P. 166a(c) (stating that "issues not expressly presented to the
trial court by written motion, answer, or other response shall not be considered on appeal as grounds for
reversal").

 Finally, and to the extent that one could possibly construe the Ramirezes' argument about "implied
agency" as suggesting that questions of fact regarding agency precluded the trial court from granting HGM's
motion to quash, we cite to Willacy County Appraisal Review Bd. v. South Padre Land Co., 767 S.W.2d 201
(Tex. App.--Corpus Christi 1989, no writ) and Union Pacific Fuels, Inc. v. Johnson, 909 S.W.2d 130 (Tex.
App.--Houston [14th Dist.] 1995, no writ). Again, they hold that a trial court may resolve issues of fact raised
in preliminary motions such as one involving the validity of service. 
3. Knowledge of this rule, like any other law, is constructively imputed to attorneys. See Webster v.
Thomas, 5 S.W.3d 287, 291 (Tex. App.--Houston [14th Dist.] 1999, no pet.) (imputing such knowledge to legal
counsel); Weaver v. E-Z Mart Stores, Inc., 942 S.W.2d 167, 169 (Tex. App.--Texarkana 1997, no writ) (holding
that all are held to constructively know the law of Texas).
4. No one disputes that the Ramirezes had two years from November 10, 1993, to file suit. 
5. Below, HGM did not object to the affidavit on the basis that it contained hearsay. Nor did it raise the
matter on appeal. So, we do not consider whether it or parts thereof were subject to being struck on that
basis. 
6. We note that the affidavit of the Ramirezes' counsel does not identify the individual who purportedly
phoned the clerk.