(No. 42162.–

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES BRACEY, Appellant.

*Opinion filed March 30, 1972.—Modified on denial of rehearing May 25, 1972.*

WARD, J., took no part.

GERALD W. GETTY, Public Defender, of Chicago (HAROLD A. COWEN and JAMES J. DOHERTY, Assistant Public Defenders, of counsel), for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and MICHAEL GOLDSTEIN, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

This is an appeal from the circuit court of Cook County which denied defendant's petition for relief under section 72 of the Civil Practice Act (Ill.Rev.Stat. 1967, ch. 110, par. 72) and the defendant's petition for relief under the Post-Conviction Hearing Act (Ill.Rev.Stat. 1967, ch. 38, par. 122–1 *et seq.*).

The defendant had been convicted of murder at a bench trial October 26, 1966, and was sentenced from 14 to 20 years in the penitentiary. This conviction was affirmed by the appellate court. *(People v. Bracey (1969), 110 Ill.App.2d 329.)* While the appeal was pending, defendant filed a petition under section 72 of the Civil Practice Act. Later a petition for relief under the Post-Conviction Hearing Act was filed. The court consolidated the two petitions for hearing, heard evidence in support thereof, and on March 15, 1968, entered an order denying the prayer of the two petitions. Both petitions contend that defendant's conviction was the result of perjured testimony given by Wanda Jean Gray.

The opinion of the appellate court on the original appeal sets forth the facts in detail. They need only be summarized for purposes of this appeal. On March 7, 1966, a group of boys 15 or 16 years of age had gone to the apartment of Emmett Tate to visit his step-daughter, Wanda Jean Gray. Tate came into the apartment and

ordered the boys to leave, which they did. One of the boys went back to get his coat. When he came out of the apartment he told the other boys that Wanda's step-father was beating her. Some of the boys, including defendant, went back to the apartment and told Tate to stop beating Wanda. He told them to stay out of his family affairs. A fight ensued between Tate and the boys. Someone fired a shot and Tate was killed. Wanda at first told the police that a boy named Sutton had fired the shot. She had also told the police on another occasion that she was unconscious at the time of the shooting. At the defendant's trial she testified that she was on the floor when the boys re-entered the apartment and that Sutton was not one of the boys who returned. She testified that the defendant was at the head of the group of boys when they entered and that during the fight that followed she saw him shoot Tate.

At the hearing on the petitions Wanda testified that when the boys had entered the apartment, defendant had told Tate to stop beating her because she was pregnant by him. She further testified that Tate thereupon struck defendant and during the fight that followed Tate was shot but that it was not the defendant who shot him. She stated she had not told the truth at the trial when she testified that the defendant had fired the shot and when she had given other testimony that indicated that the defendant was the one that shot Tate. She stated the reason she testified falsely at the trial was to get even with the defendant, because prior to the trial she had learned that at the time she became pregnant by the defendant he was married and had a child.

The same judge who found the defendant guilty at his bench trial conducted the hearing on the petitions. At the conclusion of the hearing the trial judge stated that at the original trial he had reasonable doubt that the defendant fired the shot and if that would have been the only evidence the defendant would have been discharged. Thus

the original conviction of the defendant was not based on the premise that the defendant had fired the fatal shot. The appellate court followed the same reasoning. 110 Ill.App.2d 329, at 337.

At the conclusion of the hearing on the petitions, the judge also stated that prior to trial, on an application for bail, he had been made aware that at another time Wanda had made a statement entirely different from what she was going to testify to at the trial and that now, after having seen her at the hearing on the post-trial petitions, he is not convinced that she was lying at the bench trial. He also added, "I feel that the search for truth here discloses that he is guilty and that no substantial constitutional right was violated. If there was perjury, she was a perjurious witness and I didn't base my decision on her testimony."

Whether we consider this to be a review of a section 72 motion or of a post-conviction hearing motion, the primary issue is whether the defendant is entitled to a new trial because of the alleged perjurious testimony of Wanda Jean Gray. In a section 72 proceeding the burden is on the petitioner to allege and prove facts which show that he is entitled to the relief requested. *(People v. Jennings (1971), 48 Ill.2d 295; Fennema v. Vander Aa (1969), 42 Ill.2d 309; Brockmeyer v. Duncan (1960), 18 Ill.2d 502; Glenn v. People (1956), 9 Ill.2d 335.)* The same burden must be sustained by the defendant in a hearing under the Post-Conviction Hearing Act. *People v. Logue (1970), 45 Ill.2d 170; People v. Wease (1970), 44 Ill.2d 453; People v. Caise (1967), 38 Ill.2d 486.*

"The credibility of the testimony in a post-conviction case, as in other cases tried by the court without a jury, is a matter for the trial judge to determine, and unless something appears to show that the determination by the trial judge was manifestly erroneous, the trial judge, who had an opportunity to see and hear each witness will be upheld." *People v. Alden (1959), 15 Ill.2d 498, at 503.* See also, *People v. Stone (1970), 45 Ill.2d 100; People v.*

*Burton (1970), 46 Ill.2d 135; People v. Rose (1971), 48 Ill.2d 300.*

From the comments of the trial judge it is apparent that he gave little credence to the testimony of Wanda at the original trial and at the hearings on the petition. Wanda had told four different stories of the shooting. First, she had been unconscious. Second, she saw Sutton fire the shot. Third, she saw the defendant shoot Tate. Fourth, she stated the defendant didn't shoot Tate and that her testimony at the trial had been false. Under these circumstances, the judge was entirely justified in saying at the conclusion of the hearing on the petitions, "I am not convinced now, after having seen her, I am not convinced she was lying to me in the bench trial. I am not really convinced." Obviously from these remarks the trial judge did not believe the testimony that Wanda gave at the hearing on the petitions, and thus the petitioner has failed to prove that there was perjured testimony at his trial.

In addition to the above comments concerning Wanda's testimony, the trial judge observed at the hearing on the petitions that he did not base his decision on her testimony. This court has held that we will not disturb a final judgment unless it is shown that the claimed perjured testimony is so material to the issue tried as to have probably controlled the result. *People v. Ostrand (1966), 35 Ill.2d 520; People v. Lewis (1961), 22 Ill.2d 68.*

The defendant complains that the test of "harmless error" set forth in *Ostrand* and *Lewis* does not conform to the test of "harmless error" announced by the United States Supreme Court in *Chapman v. California (1967), 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824.*

Defendant states that the use of perjured testimony violates his rights under the fourteenth amendment of the Federal constitution *(Napue v. Illinois (1959), 360 U.S. 264, 3 L.Ed.2d 1217, 79 S.Ct. 1173)* and therefore the Federal test of "harmless error" as announced in *Chapman* must apply. The opinions in *Ostrand* and *Lewis* were filed

before the decision in *Chapman* and this court has not since the latter decision re-examined its pronouncements in these two cases. We agree that *Chapman* requires the application of the Federal "harmless-error" rule fashioned by the Supreme Court in that case when rights under the Federal constitution are involved.

In *Chapman* the Court stated that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may be deemed harmless. In announcing the rule that the court must be able to declare a belief that "it was harmless error beyond a reasonable doubt" (386 U.S. 18, 24), the Supreme Court stated that this rule aimed at achieving the same result as the rule announced in *Fahy v. Connecticut (1963), 375 U.S. 85, 11 L.Ed.2d 171, 84 S.Ct. 229.* In that case it was stated: "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction 375 U.S. at 86-87, 11 L.Ed.2d at 173.

We are unable to say that the application of the rule as announced in *Ostrand* and *Lewis* would lead to a different result than the application of the harmless-error test as announced in *Chapman* or *Fahy*. However, to avoid confusion we deem it advisable to abandon the language of *Ostrand* and *Lewis* to the effect that the perjured testimony must be so material to the issues as to have probably controlled the result and to hereafter apply the harmless-error test in the language of *Chapman* and *Fahy*.

*Ostrand* and *Lewis* placed the burden on the defendant to show by clear and convincing proof that the testimony was perjured and that it was so material to the issue as to have probably controlled the result. The defendant should be required to sustain the burden insofar as establishing by clear and convincing proof that perjured testimony was used in a manner proscribed by *Napue v. Illinois (1959), 360 U.S. 264, 3 L.Ed.2d 1217, 79 S.Ct. 1173.* However, we do not believe that in line with

*Chapman* the defendant can be required to sustain the further burden of proving that the perjured testimony was so material to the issue as to have probably controlled the result, using the language of *Ostrand* and *Lewis,* or that there was a reasonable possibility that the evidence complained of might have contributed to the conviction, using the language of *Fahy.* Once the condemned use of perjured testimony has been established, *Chapman* dictated that the burden then be placed on the State to establish beyond a reasonable doubt that the perjured testimony did not contribute to the conviction.

Viewing the alleged perjured testimony in light of these revisions, as stated above, the defendant did not establish that Wanda had, in fact, given perjured testimony at the trial. Further, in the language of *Fahy* there is not a reasonable possibility that the evidence complained of might have contributed to the conviction. Or in the language of *Chapman,* the testimony, even if perjured, "was harmless beyond a reasonable doubt." The alleged perjured testimony concerned whether or not the defendant fired the shot. The judge stated at the conclusion of the bench trial that defendant's conviction did not depend on whether or not he fired the shot. Also, at the hearing on the petitions, as stated above, the judge stated he did not base his decision on Wanda's testimony.

Defendant contends that intertwined in the recanting by Wanda of her perjurious trial testimony there is sufficient new evidence to warrant the granting of a new trial under section 72. This relates primarily to the fact that at the trial she had not revealed her pregnancy and the judge was not made aware of the fact that when the defendant and others re-entered her apartment the defendant knew she was pregnant and told her step-father to stop hitting her because she was pregnant by him. The defendant urges that these additional facts, if known by the trial judge, would have established justification for the

re-entry of the apartment and the fight that ensued. The defendant knew that Wanda was pregnant by him, and when he testified at his trial he never mentioned this fact, nor was the same brought out on cross-examination of Wanda. In *People v. Jennings (1971), 48 Ill.2d 295,* we observed at page 298 concerning relief under a section 72 petition: "To be entitled to redress, the petitioner must not only show that adequate grounds for relief exist, but also that, through no fault or neglect of his own, the error of fact or the existence of a valid defense was not made to appear at the trial. Such petition is not intended to relieve a party from the consequences of his own mistake or negligence." The defendant has not shown why he failed to establish at his trial the fact of Wanda's pregnancy which was known to him at that time.

Following the hearing on the petition and the court's denial of relief, the defendant filed a motion for leave to file a supplement and amendment to the section 72 petition and the post-conviction petition. The court dismissed the same on motion of the State without a hearing. The proposed amendment concerned the violent propensities of Tate and had attached thereto certified court proceedings showing that Tate had been convicted of involuntary manslaughter. We will not consider whether such an amendment or supplement may properly be made following a decision on the prior petitions (see Ill.Rev.Stat. 1967, ch. 110, par. 46; Ill.Rev.Stat. 1967, ch. 38, par. 122—3), because it is apparent that these allegations do not concern such newly discovered evidence as would entitle the defendant to a new trial. No showing is made as to why this information was not discovered by the defendant prior to his trial or prior to the conclusion of the hearing on the original section 72 petition and post-conviction petition. The deceased's conviction was a matter of record in the circuit court of Cook County in which the defendant's case was tried and petitions heard.

Under the authority of *People v. Jennings* quoted above the court properly dismissed the motion to file the supplement and amendment to the petitions.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

MR. JUSTICE WARD took no part in the consideration or decision of this case.