(No. 62912.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CHARLES SILAGY, Appellant.

*Opinion filed April 16, 1987.—Rehearing denied June 5, 1987.*

358

362

GOLDENHERSH, J., took no part.
SIMON, J., dissenting.

Daniel D. Yuhas, Deputy Defender, and Deborah L.

Rose, Assistant Defender, of the Office of State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart, Solicitor General, and Mark L. Rotert, Scott Graham, and Jack Donatelli, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE WARD delivered the opinion of the court:

The defendant, Charles Silagy, was convicted in the circuit court of Vermilion County of the murder of two women and sentenced to death. This court affirmed on direct appeal (*People v. Silagy* (1984), 101 Ill. 2d 147), and the Supreme Court of the United States denied certiorari (*Silagy v. Illinois* (1984), 469 U.S. 873, 83 L. Ed. 2d 156, 105 S. Ct. 227). The defendant has now appealed from the circuit court's denial of a petition filed under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1983, ch. 38, par. 122–1 *et seq.*). Because of the sentence of death, there is a direct appeal to this court under Supreme Court Rule 651 (103 Ill. 2d R. 651). We affirm the judgment of the circuit court.

The circumstances of the crimes involved were discussed at length in the first appeal (*Silagy I*), 101 Ill. 2d 147, and we will discuss the facts relevant to the issues on this review. Silagy was arrested on February 15, 1980, in connection with the murders of two women in Danville. Insanity was the defense at trial. A jury found him guilty of both crimes, and he chose to represent himself at the sentencing hearing. At that hearing, Silagy confessed to the crimes and asked that the death penalty be imposed. The jury did sentence him to death, and Silagy asked that he be executed without delay. The convictions and sentence, however, were challenged on numerous grounds on direct appeal to this court, and as stated, this court affirmed.

Silagy's counsel subsequently filed a petition for post-conviction relief in the circuit court of Vermilion County (Ill. Rev. Stat. 1983, ch. 38, par. 122—1 *et seq.*). The State moved to dismiss the petition, and after argument, the court dismissed the petition; Silagy's motion for reconsideration was denied. The trial court's order held that the issues raised in the petition were previously ruled upon by this court in Silagy's direct appeal and were *res judicata*, were waived by his failure to raise them in the prior appeal, or involved simply questions of trial strategy.

The sole issue presented on this appeal is whether the trial court erred in dismissing Silagy's post-conviction petition without an evidentiary hearing on the allegations raised by affidavits that supported the petition. He argues that an evidentiary hearing was necessary to develop the allegations made in the affidavits because they presented questions of substantial constitutional importance.

Silagy raised 12 claims for relief in his petition. He has since abandoned some of the claims and grouped the remaining ones into five categories. First, he says he was denied his right to a trial by an impartial jury because (1) the statutory method of selecting jury arrays (Ill. Rev. Stat. 1979, ch. 78, par. 4) exempts certain occupations from jury service; (2) the chief clerk to the Vermilion County jury commission excludes from jury service all persons who do not return jury questionnaires, who are more than 70 years of age, and those who indicate in the juror questionnaires that they have a medical condition, which the chief clerk considered precluded them from effective jury service. An affidavit of the jury commission's chief clerk, detailing these policies, was attached. The State correctly argues that Silagy waived both claims because he failed to make the allegations at the time of jury selection, during the trial, or in his pre-

vious appeal. At a hearing under the Post-Conviction Hearing Act, the burden is on the defendant to establish a substantial deprivation of rights under the United States Constitution or the Constitution of Illinois (*People v. Griffin* (1985), 109 Ill. 2d 293, 303; *People v. Moore* (1975), 60 Ill. 2d 379, 384), and determinations by the trial court will not be disturbed unless manifestly erroneous (*People v. Griffin* (1985), 109 Ill. 2d 293, 303; *People v. Bracey* (1972), 51 Ill. 2d 514). The purpose of the post-conviction proceeding is to permit inquiry into constitutional issues involved in the original conviction that have not already been adjudicated or could have been. (*People v. Gaines* (1984), 105 Ill. 2d 79, 87; *People v. Williams* (1970), 47 Ill. 2d 1, 3.) A post-conviction petitioner is not entitled to an evidentiary hearing as a matter of right (Ill. Rev. Stat. 1983, ch. 38, par. 122—6; *People v. James* (1986), 111 Ill. 2d 283, 291), but a hearing should be conducted when the petitioner makes a " ' "substantial showing of a violation of constitutional rights" and to accomplish this the allegations in the petition must be supported by the record in the case or by accompanying affidavits.' " (*People v. Gaines* (1984), 105 Ill. 2d 79, 91-92, quoting *People v. Curtis* (1971), 48 Ill. 2d 25, 27.) The judgment of the reviewing court on a previous appeal is *res judicata* as to all issues actually decided, and any claim that could have been presented to the reviewing court in the direct appeal is, if not presented, thereafter barred under the doctrine of waiver. (*People v. Kubat* (1986), 114 Ill. 2d 424, 436; *People v. Jones* (1985), 109 Ill. 2d 19, 24; *People v. Gaines* (1984), 105 Ill. 2d 79, 87-88.) Silagy did not challenge the statutory method of selecting jury arrays or the jury commission's policies on direct appeal, and this failure to raise the claims on direct review waived the issues and precludes their being considered in a post-conviction proceeding.

Silagy also says his right to an impartial jury was violated because (1) during the trial, three jurors discussed certain newspaper articles about the trial and one juror told two other jurors that the defendant was a bad person; (2) the jury's decision to impose the death penalty was based on a misapprehension of the law as the jurors allegedly believed that Silagy would serve only five to seven years if sentenced to life imprisonment; and (3) one juror had slept during portions of the trial. An affidavit of one juror, stating the above, was filed in support of Silagy's petition. The State contends that the first two issues could have been presented in post-trial motions or upon direct appeal and the failure to do so constituted a waiver of the questions. Silagy correctly points out that the waiver rule should be relaxed where fundamental fairness so requires (*People v. Cihlar* (1986), 111 Ill. 2d 212, 218; *People v. Partin* (1977), 69 Ill. 2d 80, 83), and says that, because of the "high degree of prejudice" involved, waiver should not be applied. Because the actual effect of the complained-of conduct on the minds of the jurors cannot be proved, this court has held that "the standard to be applied is whether the 'conduct involved "such a probability that prejudice will result that it is [to be] deemed inherently lacking in due process." ' " (*People v. Holmes* (1978), 69 Ill. 2d 507, 514, quoting *Estes v. Texas* (1965), 381 U.S. 532, 542-43, 14 L. Ed. 2d 543, 550, 85 S. Ct. 1628, 1633; *People v. Tobe* (1971), 49 Ill. 2d 538, 544.) We consider that the juror's affidavit concerning jurors' alleged discussion of news reports did not demonstrate that the jury deliberations were so affected as to deprive the defendant of due process. Assertions of exposure to media coverage do not of themselves demonstrate prejudice to a defendant. (*People v. Lieberman* (1986), 149 Ill. App. 3d 1052, 1057.) Considering the record before us, we cannot say the judge's denial of an evidentiary hearing on this claim

was manifestly erroneous. (*People v. Griffin* (1985), 109 Ill. 2d 293, 303; *People v. Bracey* (1972), 51 Ill. 2d 514.) If a juror did comment to other jurors that the defendant was a bad person, it must, however, be presumed, absent a showing to the contrary, that the jury followed the court's instructions in reaching a verdict. Too, the defendant confessed before the jury that he had killed the two women; his mother had testified that she and the defendant's sister had been raped by the defendant. We can be certain that the juror's remark, if made, did not affect the jury's appraisal of the defendant's character. The defendant's second claim under this category was also properly dismissed without an evidentiary hearing, as *People v. Holmes* (1978), 69 Ill. 2d 507, 511, made clear that affidavits or testimony to show "the motive, method or process by which the jury reached its verdict" is not admissible. (See also *People v. Preston* (1979), 76 Ill. 2d 274, 288.) Silagy's third contention—that one juror slept through a portion of the trial—was addressed and decided in the previous appeal (*Silagy I*, 101 Ill. 2d 147, 170-71) and is *res judicata.*

The defendant also contends that he should be given a new trial because newly discovered evidence shows that he was suffering from a mental disease or defect at the time of the murders and that this evidence was not available at the time of trial. Silagy had raised insanity as a defense at trial. An affidavit of Dr. Leonard Porter, who had interviewed Silagy at the penitentiary at which he is confined, stated that the defendant was suffering from "post-traumatic stress disorder" during the time of the murders. Dr. Porter opined in his affidavit that this mental defect arose as a result of Silagy's combat experience in the Vietnam War. The psychiatrist who testified at the defendant's trial that Silagy was insane, Dr. Marvin Zipoyrn, stated in an affidavit that he did not consider or explore post-traumatic stress disorder during his

examination of Silagy before trial. Silagy also claimed in his petition that this particular disorder was "not officially recognized by the psychiatric community" at the time he was tried. The State argues that Silagy's claim of this particular mental defect is not to be considered newly discovered evidence that would entitle him to a new trial and that the effects of Silagy's Vietnam experience were presented in detail to the jury as part of the defendant's insanity defense. In order for newly discovered evidence to warrant a new trial, the new evidence must meet three requirements: it "must be of such conclusive character that it will probably change the result on retrial," and "it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence." (*People v. Molstad* (1984), 101 Ill. 2d 128, 134, quoting *People v. Baker* (1959), 16 Ill. 2d 364, 374.) Applying this standard, Silagy's claims do not amount to new evidence on this issue. Evidence of a mental defect as a result of post-traumatic stress disorder, although not labeled as such, was presented to the jury through testimony by the defense psychiatrist, who testified that Silagy suffered from extreme psychopathology, "a mental disease he labeled 'a psychoneurosis, specifically the subtype known as anxiety reaction or anxiety state,' which could be activated by 'external stress plus anything that would wipe out control of impulses such as drugs or alcohol.' " (*Silagy I*, 101 Ill. 2d 147, 158.) The defendant, in cross-examining the prosecution's psychiatrist, also specifically asked about the doctor's views concerning incidents in the defendant's past, which occurred in prison and in Vietnam, that could have resulted in " 'reactive psychosis.' " (*Silagy I*, 101 Ill. 2d 147, 159.) A court-appointed psychiatrist also testified about the manner in which the defendant's exposure to violence in Vietnam could affect the defendant's mental condition.

The defendant clearly presented evidence at trial of his violent experiences in Vietnam and the resulting alleged mental defect of being unable to handle stress, although he did not then term this condition "post-traumatic stress disorder." As such, the defendant has not discovered new evidence of a mental defect, but really requests to relabel the previous evidence; this does not entitle him to an evidentiary hearing at a post-conviction proceeding nor a new trial. Too, the defendant says that this disorder was not identified in the Diagnostic and Statistical Manual of the American Psychiatric Association until its third edition in 1980. In Silagy's affidavit in support of one of his other claims, he says he was examined by two of the psychiatrists in May and June of 1980. The identification of the disease in the 1980 edition would have been available to the psychiatrists when they examined Silagy and at trial. It is not "new" evidence.

In his third group of claims, Silagy says his counsel was ineffective for two reasons. First, he says counsel had failed to introduce factors in mitigation at the sentencing hearing, at which Silagy had waived assistance of counsel. The affidavit of a lawyer, Richard Ney, who acted as co-counsel at the trial and as standby co-counsel at the sentencing hearing, stated that counsel were prepared to offer evidence in mitigation, particularly concerning Silagy's troubled childhood and alcoholism, but that Silagy had discharged the attorneys and had proceeded *pro se.* Silagy contends this issue could not have been raised on direct appeal because his attorneys did not make an "offer of proof." The State argues that this attack on standby counsel's effectiveness could have been raised in the direct appeal and that it is now waived. In *Silagy I*, the defendant argued that the trial court, when it became aware that the defendant, acting as his own attorney, would not present any additional mitigating evidence at the sentencing hearing, should

have reappointed counsel to present additional evidence on his behalf (*Silagy I*, 101 Ill. 2d 147, 175). This court rejected Silagy's argument concerning the presentation of additional mitigating evidence (101 Ill. 2d 147, 179) and held, too, that Silagy made a knowing, voluntary and intelligent waiver of his right to an attorney at the sentencing phase (101 Ill. 2d 147, 180). His claim could have been raised on direct appeal as the affidavit of his standby co-counsel, Richard Ney, details the possible mitigation evidence that was available at trial, but Silagy refused to allow counsel to present it. If the evidence was available to present at trial, the objection to its omission could have been raised previously; he has waived it for review under the post-conviction proceeding. Too, Silagy had exercised his right to self-representation (*Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525), a decision this court held to have been voluntary, knowing, and intelligent; he cannot now complain that the counsel he did not want to represent him were ineffective in their standby capacity. *People v. Williams* (1983), 97 Ill. 2d 252; see also *People v. Ephraim* (1952), 411 Ill. 118, 122.

Silagy also claims his counsel were ineffective because they failed to move to suppress his statement to police while in custody the day after the murder. In support of this allegation was Silagy's affidavit, stating that he told his attorneys that a medical condition prevented his statement from being voluntary but that they did not act on this information. We judge that the defendant waived this claim of ineffective assistance of counsel by failing to raise it previously when the alleged incompetence could have been substantiated by the evidence that was in the record on the direct appeal. *People v. Kubat* (1986), 114 Ill. 2d 424, 436; *People v. Jones* (1985), 109 Ill. 2d 19, 24.

In his fourth category of claims, Silagy says his due process rights were violated because he was not advised that statements to the examining psychiatrists could be used against him in the guilt or sentencing phase of the trial. The State believes that, since Silagy challenged the use of the psychiatrists' statements at the *sentencing hearing* in his direct appeal, and that decision is *res judicata,* he must now be objecting to the use of the statements at *trial,* a point which the State says Silagy waived. The issue concerning the use of the psychiatrists' statements at the sentencing hearing was raised and decided in *Silagy I* (101 Ill. 2d 147, 174-75), and is *res judicata* here. It is obvious that if the record permitted him to argue then against admission of the statements at the sentencing hearing, he also could have then challenged their admissibility at trial. As such, the issue is waived in a post-conviction proceeding.

In Silagy's fifth category of claims, he presents four arguments that he contends show that his case should be remanded for resentencing. One of those arguments was urged on direct appeal, and that decision is *res judicata* here: that he was unfit to waive the assistance of counsel for the death penalty phase (*Silagy I*, 101 Ill. 2d 147, 176-80). His second claim under this category is that the jury heard testimony in aggravation concerning Silagy's acts of violence while in the Vietnam War without being instructed that it was only relevant to the nature and extent of the defendant's psychosis. Although the defendant did not raise this exact issue in his initial appeal, he challenged the use of this evidence concerning his Vietnam experiences (*Silagy I*, 101 Ill. 2d 147, 172-74) and could have raised this particular argument on direct review. A petitioner cannot obtain relief under the Post-Conviction Hearing Act by "rephrasing previously addressed issues in constitutional terms" in his petition (*People v. Gaines* (1984), 105 Ill. 2d 79, 90). In his third

allegation in support of a new sentencing hearing, Silagy says death by lethal injection would violate his fifth and fourteenth amendment rights to due process. When Silagy declared his willingness to be put to death, this State's death penalty statute specified electrocution as the method of execution, but it was subsequently amended to provide for death by lethal injection (Ill. Rev. Stat. 1983, ch. 38, par. 119—5(a)). Silagy's supporting affidavit stated that, had he known that the law would be changed to provide for execution by lethal injection, rather than electrocution, he would have neither requested the death penalty nor waived counsel at the sentencing hearing. Silagy cites no authority for his argument that his constitutional rights were violated by the legislature's changing the method of execution to lethal injection under the death penalty act, nor has our research revealed any authority for his contention. Silagy, at his sentencing hearing, specifically requested the death penalty. He did not specify electrocution as the means of execution and he of course was not assured that that means would be used. It can hardly be said that a defendant sentenced to death has a right to choose a particular means of execution. We would also observe parenthetically that commentators and medical experts have urged that death by lethal gas or injection is a more sure, swift, and humane means than electrocution (*Glass v. Louisiana* (1985), 471 U.S. 1080, 1093, 85 L. Ed. 2d 514, 525, 105 S. Ct. 2159, 2168 (Brennan and Marshall, JJ., dissenting from denial of *certiorari*).) Silagy's claim is without merit, and the trial court properly dismissed it without an evidentiary hearing.

Silagy's final contention to support his claim for a new sentencing hearing is that the death penalty was arbitrarily imposed. The defendant challenged the death penalty on this point in his initial appeal (*Silagy I*, 101 Ill. 2d 147, 183). The only "new" evidence the defendant

offers to support his contention is a 1985 newspaper article on the frequency of imposition of the death penalty and the type of cases in which the penalty was imposed. This court was presented with a similar study in *People v. Lewis* (1984), 105 Ill. 2d 226, 251, and held that the study did not demonstrate that the death penalty is imposed arbitrarily in this State. This court has held that the death penalty is not arbitrarily imposed because it allows the prosecutor discretion in seeking the penalty (*People v. Lewis* (1981), 88 Ill. 2d 129, 146; *People v. Kubat* (1983), 94 Ill. 2d 437, 501-03), and the Supreme Court of the United States has declared that comparative proportionality review on appeal is not required (*Pulley v. Harris* (1984), 465 U.S. 37, 79 L. Ed. 2d 29, 104 S. Ct. 871; see also *People v. Free* (1986), 112 Ill. 2d 154, 160-61; *People v. Hall* (1986), 114 Ill. 2d 376, 420. The trial court properly rejected this claim without an evidentiary hearing.

The Post-Conviction Hearing Act permits summary dismissals of nonmeritorious petitions without an evidentiary hearing. (*People v. James* (1986), 111 Ill. 2d 283, 292; *People v. Derengowski* (1970), 44 Ill. 2d 476.) The defendant did not present any legitimate claim of a violation of his constitutional rights. The trial court correctly held that the petition did not require an evidentiary hearing, and the judgment of the circuit court of Vermilion County is affirmed. The clerk of this court is directed to enter an order fixing Tuesday, September 22, 1987, as the date on which the sentence of death entered in the circuit court shall be executed at the Stateville Correctional Center at Joliet. The defendant shall be executed by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 119—5). A certified copy of the mandate in this case shall be furnished by the clerk of this court to the Director of Corrections, to

the warden of Stateville Correctional Center, and the warden of the institution at which defendant is confined.

*Judgment affirmed.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.

JUSTICE SIMON, dissenting:

I take this opportunity to speak out once again on the mistake of inflexibly applying the doctrine of *stare decisis* to constitutional decisions, particularly those involving the constitutionality of our death penalty statute. The court insists on enslaving itself to *stare decisis* in upholding death sentences even though it has acknowledged in areas of less pressing concern that "[t]he tenets of *stare decisis* cannot be so rigid as to incapacitate a court in its duty to develop the law. [Citation.] Clearly, the need for stability in law must not be allowed *** to veil the injustice resulting from a doctrine in need of re-evaluation." (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 24.) Last year in *People v. Kohrig* (1986), 113 Ill. 2d 384, this court upheld a mandatory seat-belt law against a due process challenge, even though doing so required us expressly to overrule *People v. Fries* (1969), 42 Ill. 2d 446, which had struck down a constitutionally indistinguishable law requiring motorcyclists to wear helmets.

In death penalty cases, however, this court has inexplicably regarded *stare decisis* as superior to the commands of the Constitution itself. As I noted in a former opinion involving this defendant (*People v. Silagy* (1981), 101 Ill. 2d 147, 184 (Simon, J., concurring in part and dissenting in part)), this attitude is badly out of step with the United States Supreme Court's approach to *stare decisis* in constitutional cases. The Supreme Court has repeatedly demonstrated its willingness to reevaluate and overrule prior constitutional decisions. (See

Note, *Stare Decisis and the Illinois Death Penalty*, 1986 U. Ill. L. Rev. 177; Note, *The Power That Shall Be Vested In A Precedent: Stare Decisis, The Constitution and the Supreme Court*, 66 B.U.L. Rev. 345 (1986).) In his dissenting opinion in *Burnet v. Coronado Oil & Gas Co.* (1932), 285 U.S. 393, 407-11, 76 L. Ed. 815, 823-27, 52 S. Ct. 443, 447-49, Justice Brandeis cited 28 cases in which the court qualified or overruled a prior constitutional ruling. Justice Douglas identified another 21 reversals in constitutional cases between 1937 and 1949. (Douglas, *Stare Decisis*, 49 Colum. L. Rev. 735, 743 (1949).) By 1958, two commentators were able to point to a total of 60 cases in which the court had reversed itself on constitutional issues (see Blaustein and Field, *"Overruling" Opinions in the Supreme Court*, 57 Mich. L. Rev. 151, 167 (1958)), and the court overruled constitutional decisions 47 more times between 1960 and 1980 (Maltz, *Some Thoughts on the Death of Stare Decisis in Constitutional Law*, 1980 Wis. L. Rev. 467). See generally, *Stare Decisis and the Illinois Death Penalty*, 1986 U. Ill. L. Rev. 177, 186.

For the reasons more fully stated in my separate opinions in *People v. Lewis* (1981), 88 Ill. 2d 129, 179 (Simon, J., dissenting), in *People v. Silagy* (1984), 101 Ill. 2d 147, 184 (Simon, J., concurring in part and dissenting in part), and in *People v. Albanese* (1984), 104 Ill. 2d 504, 549 (Simon, J., concurring in part and dissenting in part), I believe we should follow the Supreme Court's lead. I urge the court to discontinue affirming sentences of death on the ground of *stare decisis* and instead to reconsider the constitutionality of the statute on its merits. Since the Illinois death penalty statute is—in my view— unconstitutional, I would vacate the death sentence in this case.