**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190591-U

Order filed September 27, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0591 Circuit No. 90-CF-3013 |
| | ) | |
| RUSSELL L. JONES, | ) ) | Honorable Daniel L. Kennedy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Hauptman and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The circuit court properly denied defendant leave to file a successive postconviction petition.

¶ 2    Defendant, Russell L. Jones, appeals from the Will County circuit court's denial of his motion for leave to file a successive postconviction petition. Defendant argues the court erroneously denied his motion because it established a colorable claim of actual innocence based on new evidence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         The State charged defendant by indictment with first degree murder (Ill. Rev. Stat. 1989,

ch. 38, ¶ 9-1(a)(2)). The matter proceeded to a jury trial on November 8, 1990.

¶ 5         Maurice Daniels testified on August 20, 1990, at approximately 12 p.m., he was standing

in front of Cynthia Wilder's residence with Wilder, Adrienne Tripp, Dirk Jones, Martha Lee, and

Gregory Lee. At that time, Daniels observed a mustard-colored car drive slowly past the house.

Daniels knew defendant from prior interactions and identified defendant as the individual that sat

in the rear passenger side of the car. Defendant wore a gold shirt and something red around his

head. Defendant opened the door and yelled "something to do with the Vice Lords." Daniels

recalled that Dirk was shocked and stated, "[t]hey could have shot me." Approximately 10

minutes later, the car drove past Wilder's residence again. Daniels observed defendant lying

down in the backseat hanging out of the open door and firing a gun. Following the gunfire,

Daniels observed that Dirk was injured and heard Dirk say, "[t]hey got me." Daniels identified a

photograph of the car he saw defendant in that night.

¶ 6         Tripp testified that in the early morning hours of August 20, 1990, she was at Wilder's

residence with Wilder, Gregory, Daniels, Dirk, and Martha. Tripp observed a light-colored four-

door car drive past the residence. Tripp could only identify defendant in the rear passenger side

seat as one of the three individuals in the vehicle. Tripp identified defendant from a photographic

lineup on November 2, 1990. Tripp identified a photograph of the yellow car and the black hat

that defendant wore the night of the shooting.

¶ 7         Gregory testified that while sitting on the porch of Wilder's residence in the early

morning hours of August 20, 1990, he observed a yellow car with tinted windows drive by

slowly. The rear passenger side door opened, and an individual hung out the side of the car.

Gregory could not identify the individual but saw that the shooter wore a yellow shirt and a black hat with red detail. Gregory identified the black hat and yellow shirt collected from defendant the night of the shooting as the clothing that he observed the individual wearing. A short time later, the yellow car returned and drove slowly past the residence when someone began shooting a firearm. Gregory heard Dirk say, "[t]hey got me." Gregory identified a photograph of the car involved in the shooting.

¶ 8     On cross-examination, Gregory stated that he knew defendant but did not see defendant the night of the shooting.

¶ 9     Wilder testified that on August 20, 1990, at approximately 12:30 a.m. she was sitting in front of her house with Dirk, Gregory, Martha, Tripp, and Daniels when she observed a mustard-colored car slowly drive past the house. Wilder observed someone open the rear passenger side door, lean out, and display a gang sign. The individual in the backseat wore a yellow shirt and a red bandana on his head. Approximately 5 to 10 minutes later, Wilder saw the same car drive past again. The rear passenger side door was open, and the same individual wearing a yellow shirt leaned out. The individual had a firearm and began shooting. Wilder heard Dirk say, "[t]hey got me." Wilder observed that Dirk had been shot in the neck and died from his injury. When the police arrived, they took Wilder to view the stopped car and two suspects. Initially, Wilder was unsure if the two individuals were involved in the shooting. After Wilder identified the stopped car as the yellow car involved in the shooting, she identified defendant as the shooter. At the scene, defendant wore a yellow shirt and a black hat with a red design. Wilder identified a photograph of the yellow car involved in the shooting and the black hat and yellow shirt that defendant wore the night of the shooting.

3

¶ 10     On cross-examination, Wilder stated that she did not see the shooter's face but identified defendant as the shooter by his clothing. Initially, Wilder thought that defendant wore a red bandana, but later realized that the angle of defendant's hat made the red details look like a bandana.

¶ 11     Joliet Police Officer Michael Trafton testified that after 1 a.m., he observed a gold-colored car that matched the description of the car involved in the shooting parked near the scene. Trafton observed an individual, Joel Scott, walking approximately 10 feet from the vehicle and conducted a stop. Trafton searched Scott and found two .38-caliber bullet casings on his person. Trafton observed defendant approximately 15 feet away from the car and took defendant into custody.

¶ 12     Joliet Police Officer William Smith testified that he collected evidence from the yellow car near the scene that witnesses identified as the car from the shooting. Smith located a .38-caliber revolver under the driver's seat. Smith also collected several prints from the exterior of the rear passenger door of the car. The prints were on the door handle, above the window, and below the window.

¶ 13     Reginald Lashley, an evidence technician, testified that he recovered two bullets from Wilder's residence. He described the bullets as .38-caliber.

¶ 14     Walter Sherk, a forensic scientist, testified that the .38-caliber casing recovered from Scott and bullets from the interior of Wilder's residence were fired from the revolver found in the car.

¶ 15     Joseph Ambrozich, a forensic scientist, testified that the latent prints lifted from the exterior of the rear passenger door from the top of the frame and below the window matched defendant's fingerprints.

4

¶ 16        Alvia Garcia testified that she was in a relationship with defendant on August 20, 1990. Defendant was at Garcia's house at approximately 9 p.m. the night before the shooting and left in a yellow car at approximately 10:30 p.m.

¶ 17        On cross-examination, Garcia testified that on August 19, defendant wore a gold shirt and a black hat. Garcia identified the yellow shirt and black hat defendant wore the night of the shooting. Garcia saw defendant leave with Scott.

¶ 18        Sheila Backstrom testified that defendant was at her residence with her sister, Gail Backstrom, at approximately 10 p.m. on August 19, 1990. At one point, defendant left the residence to purchase liquor.

¶ 19        Gail testified that defendant came to her house at approximately 10:45 p.m. on August 19. Gail and defendant drank alcohol on her front porch. At some point, defendant left to purchase liquor and returned approximately 10 minutes later.

¶ 20        The jury found defendant guilty of first degree murder. The court sentenced defendant to 80 years' imprisonment. On direct appeal, this court affirmed defendant's conviction and sentence. *People v. Jones*, 226 Ill. App. 3d 1054, 1055 (1992).

¶ 21        On March 18, 1994, defendant filed a postconviction petition alleging, *inter alia*, (1) a claim of actual innocence based on an alibi defense that defendant was at a bar in a location away from the murder scene committing another crime at approximately the same time as the murder, (2) ineffective assistance of trial counsel for failing to call alibi witness, Devi Austin, pertaining to the new alibi defense, and (3) ineffective assistance of trial counsel for failing to raise an issue with Tripp's delayed identification of defendant as the shooter following her appearance in court pursuant to a subpoena on October 29, 1990. The circuit court denied defendant's petition at the second stage, and we affirmed on appeal. *People v. Jones*, No. 3-95-

0625 (1996) (unpublished summary order under Illinois Supreme Court Rule 23(c)). Specifically, we found that defendant was not prejudiced by counsel's failure to move to suppress Tripp's testimony, given the other witnesses who identified defendant as the shooter.

¶ 22        On March 20, 1997, defendant filed a successive postconviction petition alleging, *inter alia*, ineffective assistance of trial counsel for failing to (1) move to suppress Tripp's faulty identification, and (2) adequately cross-examine Wilder, Daniels, and Gregory, on their descriptions of the shooter and the identification of defendant. Defendant also alleged claims of ineffective assistance of appellate counsel for failing to raise the stated claims on appeal and unreasonable assistance of postconviction counsel for failing to raise the claims in his initial postconviction petition. The court summarily dismissed defendant's petition, and we affirmed on appeal and allowed counsel to withdraw. *People v. Jones*, No. 3-97-0443 (1999) (unpublished dispositional order).

¶ 23        On June 12, 2001, defendant filed a successive postconviction petition alleging, *inter alia*, an actual innocence claim supported by newly discovered evidence that would have changed the outcome of his trial. Specifically, defendant alleged that Gregory induced Wilder, Daniels, and Tripp to commit perjury by identifying defendant as the shooter. Defendant also realleged an alibi defense in that defendant was at another location committing a different crime at the time of the murder. Further, defendant provided an affidavit from Marshallow Britton, who averred that he observed the shooting committed by a light-skinned individual but could not identify the shooter. Britton also contended that Gregory told the witnesses to report to police that defendant was the shooter.

¶ 24        The court granted the State's motion to dismiss. On appeal, we affirmed. *People v. Jones*, No. 3-06-0004 (2008) (unpublished order under Illinois Supreme Court Rule 23). We found that,

6

assuming the affidavits provided newly discovered evidence, the evidence was not likely to change the result on retrial where the witnesses identified: the car involved in the shooting, defendant's proximity to the car, and defendant's clothing as the clothing worn by the shooter.

¶ 25　　　　On December 7, 2011, defendant filed a petition for leave to file a successive postconviction petition. The petition alleged a claim of actual innocence in that Wilder recanted her testimony identifying defendant as the shooter and contended that she based her identification on officers informing her that defendant was in the car she identified. Defendant supported these allegations with an affidavit from Wilder. Defendant also realleged an issue with Tripp's identification of defendant and cross-examination of Tripp regarding her inability to identify defendant as the shooter, Tripp's statement that she "believe[d] that she would be able to identify the subject if she viewed him again," Tripp's appearance in court pursuant to a subpoena on October 29, 1990, where defendant was also present, and her eventual identification of defendant in a photographic lineup on November 2, 1990, and after viewing defendant on the prior court date.

¶ 26　　　　The circuit court denied defendant's motion for leave to file, finding that defendant was unable to establish cause for failing to raise these claims earlier. On appeal, we affirmed. *People v. Jones*, No. 3-12-0027 (2013) (unpublished dispositional order). We found that Wilder's affidavit did not establish a colorable claim of actual innocence in light of Daniels, Tripp, and Gregory's testimony. We relied on Daniels's identification of defendant as the shooter, description of defendant's clothing, and identification of the car that defendant rode in. Tripp identified defendant as the person in the rear passenger seat of the yellow car that drove by Wilder's residence before the shooting. Further, Gregory did not identify defendant as the shooter, but was able to identify defendant's clothing as the clothing the shooter wore.

7

¶ 27        On August 21, 2019, defendant filed a motion for leave to file a successive postconviction petition. Relevant to this appeal, defendant alleged a claim of actual innocence based on an affidavit from Oniiwa Wilson, who averred that he conspired with Gregory to convince Wilder and Tripp to lie at trial and frame defendant for the shooting. Wilson was in prison at the time of the shooting. Following his release in early October 1990, Wilson had conversations with Gregory, Wilder, and Tripp several days before defendant's trial began. Wilson indicated that defendant was a "known enemy" and that Gregory "hated [defendant]." Wilson told Gregory that to ensure defendant's conviction for the murder, Gregory, Wilder, and Tripp "had to *** testify in court that it was [defendant] that they saw shooting from the car." Wilson told Wilder and Tripp "to lie and say that they seen [*sic*] [defendant] shooting from the car." Wilson stated that while in court with Tripp and Wilder, he had to point defendant out to them when defendant entered the room. A few days later, Tripp identified defendant as the shooter in a photographic lineup.

¶ 28        The court denied defendant's motion for leave to file his successive postconviction petition. Defendant appealed.

¶ 29                          II. ANALYSIS

¶ 30        Defendant argues that the circuit court erred by denying his motion for leave to file a successive postconviction petition where he set forth a colorable claim of actual innocence. Specifically, Wilson's affidavit established that three of the State's witnesses conspired to frame defendant for the murder.

¶ 31        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) permits a criminal defendant to challenge the proceedings which resulted in his conviction by asserting that "there was a substantial denial of his or her rights under the Constitution of the United States

8

or of the State of Illinois or both." *Id.* § 122-1(a)(1). The Act contemplates the filing of a single postconviction petition. *People v. Robinson*, 2020 IL 123849, ¶ 42. A defendant must obtain leave of court to file a successive postconviction petition. *People v. Wrice*, 2012 IL 111860, ¶ 47; *Robinson*, 2020 IL 123849, ¶ 43; 725 ILCS 5/122-1(f) (West 2018). To obtain leave, the defendant must allege either (1) "cause and prejudice for the failure to assert a postconviction claim in an earlier proceeding" or (2) "a fundamental miscarriage of justice based on actual innocence." *Robinson*, 2020 IL 123849, ¶ 42. "A request to file a successive petition based on actual innocence is reviewed under a higher standard than that applicable to the first stage for an initial petition, which only requires that the petition is not frivolous or patently without merit." *Id.* ¶ 43.

¶ 32        To establish a claim of actual innocence, the defendant must present " 'new, material, noncumulative' " evidence that is so conclusive it would " ' "probably change the result on retrial." ' " *People v. Coleman*, 2013 IL 113307, ¶ 84 (quoting *People v. Washington*, 171 Ill. 2d 475, 489 (1996), quoting *People v. Silagy*, 116 Ill. 2d 357, 368 (1987)). "Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Robinson*, 2020 IL 123849, ¶ 48. "A request for leave to file a successive petition should be denied only where it is clear from a review of the petition and supporting documentation that, as a matter of law, the petition cannot set forth a colorable claim of actual innocence." *Id.* ¶ 44. That is, a defendant is entitled to leave when the "documentation [supporting the petition] raises the probability that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence." *Id.*

¶ 33   "Newly discovered evidence is evidence that was discovered after trial and that the [defendant] could not have discovered earlier through the exercise of due diligence." *Id.* ¶ 47. "Evidence is material if it is relevant and probative to the [defendant's] innocence." *Id.* "Noncumulative evidence adds to the information that the fact finder heard at trial." *Id.* "[T]he conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result." *Id.* In other words, the question is "whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Id.* ¶ 48. "Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Id.* We review the court's second-stage dismissal of a postconviction petition *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 34   Here, defendant's claim derives from a new witness who allegedly persuaded the State's witnesses to lie and identified defendant for Tripp prior to the photographic lineup. In a prior appeal, we considered the claim that the State's witnesses perjured themselves and lied about defendant's involvement in the shooting. See *Jones*, No. 3-06-0004. In another appeal, we considered defendant's claim regarding Tripp's identification of defendant as the shooter after having observed defendant in court. See *Jones*, No. 3-95-0625. Thus, Wilson's affidavit is not newly discovered evidence, as it presents the same claim and relies on similar information as that presented during a prior postconviction proceedings. See *People v. Davis*, 2014 IL 115595, ¶ 55 ("A defendant is not permitted to develop the evidentiary basis for a claim in a piecemeal fashion in successive postconviction petitions.").

¶ 35    Even assuming, *arguendo*, that all the information in Wilson's affidavit is newly discovered, material, and not cumulative; the affidavit is not of such a conclusive nature that it would probably change the result on retrial. Here, Daniels identified defendant as the shooter. Defendant was found near the yellow car identified by Daniels, Wilder, and Gregory as the car involved in the shooting, wearing the clothing that the witnesses identified the shooter to be wearing. Defendant's fingerprints were located in several locations on the rear passenger door where the shooter was observed sitting. Moreover, the gun located under the driver's seat matched the bullets recovered from Wilder's residence. In light of this evidence, Wilson's new statement that he coerced the State's witnesses to identify defendant as the shooter days before trial would not change the result on retrial. In other words, if Wilson's statement undermined the testimony of Wilder, Gregory, and Tripp, the remaining evidence still established that defendant committed the murder. Therefore, the court did not err in denying defendant leave to file a successive postconviction petition.

¶ 36                                   III. CONCLUSION

¶ 37    The judgment of the circuit court of Will County is affirmed.

¶ 38    Affirmed.

11