2022 IL App (1st) 211551-U

SECOND DIVISION
September 27, 2022

No. 1-21-1551

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 5342 |
| | ) | |
| GEORGE WATTS, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Ellis concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm the judgment of the circuit court of Cook County denying defendant's petition for postconviction relief; defendant failed to establish his actual innocence of criminal sexual assault based on the victim's subsequent affidavit denying sexual penetration of her anus; the trial court properly found that the victim's subsequent testimony regarding the sexual contact between herself and defendant was not credible.

¶ 2    Defendant, George Watts, filed a petition for postconviction relief from his conviction for the criminal sexual assault of his daughter, O.W., then a minor, based on sexual penetration of her anus. Defendant argued he was actually innocent of the offense based on O.W.'s current affidavit stating that defendant's naked penis never made any contact with her naked anus and that the two never had sex of any kind. The circuit court of Cook County convicted defendant of the offense at issue as well as criminal sexual assault of O.W. based on sexual penetration of her

vagina and two additional counts of aggravated criminal sexual abuse. Defendant's petition did not raise any claims related to the counts other than criminal sexual assault based on sexual penetration of the anus. The trial court denied defendant's petition following a third stage evidentiary hearing based on the trial judge's finding that O.W.'s postconviction testimony was not credible.

¶ 3     For the following reasons, we affirm.

¶ 4                               BACKGROUND

¶ 5     We discussed the evidence leading to defendant's conviction in our disposition of defendant's direct appeal. *People v. Watts*, 2014 IL App (1st) 122564-U. Here, we provide only the limited amount of detail from defendant's trial that is necessary for a full understanding of the resolution of the instant appeal. Following a jury trial, the circuit court of Cook County convicted defendant of two counts of criminal sexual assault and two counts of aggravated criminal sexual abuse against O.W., a minor. O.W., born November 30, 1993, is defendant's daughter. In 2008, when O.W. was 14 years old, defendant lived in a residence with O.W. and her mother. The assaults occurred between 2008 and 2010. The mechanism of the assault was that defendant would drive O.W.'s mother to work in the mornings, return home, and sexually assault O.W. Early on, defendant would engage in "grinding" O.W.'s buttocks over her clothing with his erect penis. This progressed to defendant pulling down O.W.'s pants and touching her vagina and buttocks with his erect penis.

¶ 6     O.W. testified at defendant's trial that she told a doctor who was examining her related to the alleged assaults that defendant had sex with her "in the front and in the back," pointing to O.W.'s crotch and buttocks. O.W. also testified she told the doctor that her father had sex with her more than 10 times from the front and from the back. O.W. did not provide the doctor with

any additional details about that statement. The doctor who examined O.W. for injuries testified at the trial that she did not go into detail with O.W. about defendant's "grinding" on O.W. On cross-examination, when asked if O.W. told the doctor that defendant rubbed his penis on O.W.'s anus, the doctor testified that O.W. "mentioned" her "behind," but the doctor did not know the "levels of penetration [or] rubbing."

¶ 7    The jury found defendant guilty of two counts of criminal sexual assault for committing an act of sexual penetration to O.W.'s anus and vagina and two counts of aggravated criminal sexual abuse. Defendant appealed his conviction for criminal sexual assault based on penis to anus penetration on the ground "the State failed to prove that an act of sexual penetration occurred between his penis and the victim's anus." *Watts*, 2014 IL App (1st) 122564-U, ¶ 2. This court rejected defendant's argument and affirmed the conviction.

¶ 8    In his direct appeal, defendant argued the State

"failed to show that there was any contact between his penis and O.W.'s anus. Specifically, defendant maintains that O.W.'s testimony that defendant's erect penis was against 'her butt' was too vague to prove that he committed an act of sexual penetration in relation to O.W.'s anus beyond a reasonable doubt, and merely showed that his penis made contact with O.W.'s general buttocks area." *Watts*, 2014 IL App (1st) 122564-U, ¶ 13.

¶ 9    This court rejected defendant's argument. This court relied on (1) O.W.'s testimony that defendant "put his erect penis against her butt when neither one of them were wearing clothes, and that it felt uncomfortable," (2) that O.W. testified she told the doctor "that defendant had sex with her 'from the front and the back,' and pointed to her vaginal area and her butt," and (3) the doctor confirmed that O.W. made that statement and that O.W. told the doctor that "defendant

had sex with her more than 10 times." This court found that the evidence, viewed in the light most favorable to the verdict in favor of the State, supported the inference that "defendant's penis made 'any contact, however slight,' with O.W.'s anus." *Id.* ¶ 14. See also 720 ILCS 5/12-12(f) (West 2008) (defining sexual penetration).

¶ 10    In October 2015 defendant, through appointed counsel, filed an amended petition for postconviction relief based on actual innocence. The petition focused "only on the testimony of O.W. and her specific descriptions of the exact type of sexual contact that occurred between her and [defendant.]" The petition states that the doctor who testified at defendant's trial "never offered testimony about any details that O.W. provided concerning what O.W. meant by the words 'had sex' or the specifics of the exact contact that [defendant's] naked penis had with any part of O.W.'s [naked] body." The petition states that, in an affidavit attached to the petition, O.W. "confirms that [defendant's] naked penis never had contact with her naked anus at any time" and that this statement is consistent with O.W.'s trial testimony. The petition states that "it was never specifically asked nor *** specifically established *** that [defendant's] naked penis made contact with O.W.'s naked anus."

¶ 11    The petition argued that O.W.'s affidavit constitutes new and material noncumulative evidence of actual innocence and that defendant's conviction for criminal sexual assault based on contact between his naked penis and her anus (count V against defendant) should be vacated and defendant should be resentenced on the remaining counts. Defendant conceded the sufficiency of the evidence of criminal sexual assault based on contact between his naked penis and his daughter's naked vagina. The petition argued that defendant had "overwhelmingly established that the affidavit would have made a difference had it been presented at trial."

¶ 12    O.W.'s affidavit states, in pertinent part, as follows:

"[Defendant] rubbed his naked penis on the outside of my naked vagina.

[Defendant] also rubbed his naked penis against my naked buttocks on the cheeks.

[Defendant] never had any contact between his naked penis and my naked anus.

[Defendant] and I never had sexual intercourse involving full penetration.

It has come to my attention that [defendant] was convicted and is serving

an additional prison sentence based on the charge that there was contact between

his penis and my anus. This never happened. The contact was between the

exterior of my naked buttock cheeks and not my naked anus."

O.W. also averred she did not write or prepare the Victim Impact Statement in this case and that it does not contain her words.

¶ 13    The trial court conducted an evidentiary hearing on defendant's postconviction petition. O.W. testified at the hearing that her trial testimony was truthful. O.W. testified she and her father never had full sexual intercourse. When asked if her father ever "put his penis inside [her] anus" O.W. responded "No." O.W. testified defendant never rubbed his naked penis against her naked anus. When asked whether "there [was] ever any contact, however slight, between [defendant's] naked penis and [her] naked anus," O.W. responded, "No." She testified defendant rubbed his penis against the cheeks of her buttocks. O.W. testified defendant's penis did not touch her actual anus. O.W. denied ever telling anyone that she had sex with her father. She affirmatively stated "I did not have sex with my father." O.W. initially testified that she did not recall telling the doctor that her father had sex with her more than ten times, but on cross-examination O.W. admitted that she told the doctor that defendant had sex with O.W. more than ten times. O.W. did not prepare her affidavit but testified that what is in the affidavit is true. O.W. denied telling an Assistant State's Attorney that defendant's penis was in between her

buttock cheeks or that he rubbed between her buttocks cheeks. She was 27-years old at the time of her testimony at the evidentiary hearing.

¶ 14     The trial court denied defendant's petition for postconviction relief. The trial court stated it had listened carefully to O.W.'s testimony at the trial, including her statements to the doctor, and listened to her testimony at the hearing and found that O.W. "knew that she was penetrated even though it was slight penetration but the law only requires slight penetration." The court found that O.W.'s attempt to equivocate on her trial testimony was not a pure recantation, "but her testimony [is] that she understands what penetration is now and this was not penetration because his erect penis was against her butt cheeks but didn't really penetrate the anus." The court said, "I'm not buying that."

¶ 15     This appeal followed.

¶ 16                                    ANALYSIS

¶ 17     The sole issue in defendant's petition for postconviction relief is whether defendant established a claim of actual innocence. Defendant did not have to prove that he is innocent. See *People v. Coleman*, 2013 IL 113307, ¶ 97 ("the sufficiency of the State's evidence to convict beyond a reasonable doubt is not the determination that the trial court must make. If it were, the remedy would be an acquittal, not a new trial."). Rather, to establish a claim of actual innocence under the Post-Conviction Hearing Act (Act) defendant had to produce evidence that is (1) newly discovered, (2) material and noncumulative, and (3) of such conclusive character that it would *probably* change the result on retrial. *People v. Collins*, 2021 IL App (1st) 170597, ¶ 51. Our supreme court has found it "appropriate to note *** that the United States Supreme Court has emphasized that such claims [of actual innocence] must be supported 'with new reliable evidence *** that was not presented at trial.' [Citation.]" *People v. Edwards*, 2012 IL 111711, ¶

32. "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful. [Citation.]" (Internal quotation marks omitted.) *Edwards*, 2012 IL 111711, ¶ 32.

¶ 18     Because all of defendant's evidence in support of his claim comes from O.W.'s testimonial evidence, the sole issue in this case rests wholly on O.W.'s credibility. See *Porter v. City of Chicago*, 393 Ill. App. 3d 855, 875 (2009) (Gordon, J., dissenting) ("Ordinarily, the dominant credibility issue with respect to recanted testimony is whether to believe the recantation and decide that the original testimony must be false, or *vice versa,* to believe the original testimony and conclude that the recantation is false."); *People v. Hernandez*, 298 Ill. App. 3d 36, 40-41 (1998) (finding a credibility determination is required "to delve into the details and circumstances of *** prior testimony and recantation"). The trial court can only determine witness credibility and the weight to be given particular testimony and evidence, and resolve any evidentiary conflicts, at a third-stage evidentiary hearing. *People v. Saleh*, 2020 IL App (1st) 172979, ¶¶ 38-39 (citing *People v. Domagala*, 2013 IL 113688, ¶¶ 34-35).

¶ 19     Third-stage evidentiary hearings involve issues of either credibility and factual determinations or pure questions of law. *People v. Carter*, 2013 IL App (2d) 110703, ¶ 76. When credibility determinations are necessary, as they are in this case, this court will "review a trial court's denial of a postconviction petition after a third-stage evidentiary hearing for manifest error, which occurs when an error is plain, evident, and indisputable." *People v. Knight*, 2020 IL App (1st) 170550, ¶ 37. See also *People v. Coleman*, 183 Ill. 2d 366, 384 (1998) (citing *People v. Bracey*, 51 Ill. 2d 514 (1972) ("the 'manifestly erroneous' standard applied to credibility determinations made at the evidentiary stage of the proceeding")). Under this standard, "we accord great deference to the trial court's factual determinations." *People v. Meyers*, 2016 IL

App (1st) 142323, ¶ 21 (citing *People v. Childress,* 191 Ill. 2d 168, 174 (2000)). Our supreme court requires that "unless something appears to show that the determination by the trial judge was manifestly erroneous, the trial judge, who had an opportunity to see and hear [the] witness should be upheld." *Bracey*, 51 Ill. 2d at 517. This standard is based on the understanding that "the post-conviction judge is able to observe and hear the witnesses at the evidentiary hearing and, therefore, occupies a 'position of advantage in a search for the truth' which 'is infinitely superior to that of a tribunal where the sole guide is the printed record.' [Citation.]" *Coleman*, 183 Ill. 2d at 384.

¶ 20    Turning to defendant's actual innocence claim in this case, we find that we have no need to address whether O.W.'s postconviction evidence is new, noncumulative, or material. See *Collins*, 2021 IL App (1st) 170597, ¶ 54 (finding "conclusive character" element dispositive). "[T]he conclusive character of the new evidence is the most important element of an actual innocence claim. [Citation.] This court 'must be able to find that petitioner's new evidence is so conclusive that it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt.' [Citation.]" *Id.* We find that the dispositive question is whether the trial court's judgment, that O.W.'s testimonial evidence is so incredible that it was not of such conclusive character that it would probably change the result on retrial, is manifestly erroneous, meaning that the error in the trial court's judgment is plain, evident, and indisputable. *Id.*, ¶ 51.

¶ 21    First, defendant disputes the trial court's finding that O.W. was not credible and argues that finding is manifestly erroneous. Defendant argues the circumstances surrounding her testimony demonstrate her credibility. Defendant argues those circumstances are that O.W.'s postconviction testimony is consistent with her trial testimony, nothing in her postconviction testimony is indicative of recanting her trial testimony, and the State failed to impeach O.W.'s

testimony at the evidentiary hearing. Defendant claims the record contains no basis for the trial court's rejection of O.W.'s testimony. See *People ex rel. Brown v. Baker*, 88 Ill. 2d 81, 85 (1981) ("Where the testimony of a witness is neither contradicted, either by positive testimony or by circumstances, nor inherently improbable, and the witness has not been impeached, that testimony cannot be disregarded even by a jury.").

¶ 22    The State responds the trial court did not commit manifest error because it "approached the matter in a comprehensive manner and made the credibility determinations that are uniquely appropriate for [postconviction] judges to make," and because to the extent they do constitute a recantation O.W.'s affidavit and testimony are "inherently unreliable." The State argues that "given the inconsistent and contradictory nature of the affidavit and hearing testimony" the trial court properly found O.W.'s postconviction evidence incredible. See *People v. Morgan*, 212 Ill. 2d 148, 155 (2004) ("The recantation of testimony is regarded as inherently unreliable. As a result, the courts will not grant a new trial on that basis except in extraordinary circumstances."). Further, the State argues the court's credibility determination is "wholly supported by the record" because O.W.'s postconviction evidence was "internally inconsistent, contradicted her affidavit, and contradicted her trial testimony."

¶ 23    This court recognizes that "[m]any factors enter into assessing the credibility of witnesses." *People v. Major*, 244 Ill. App. 3d 1013, 1020 (1993). Relevant factors include "demeanor, internal consistency and the like." See *People v. Hawkins*, 243 Ill. App. 3d 210, 222 (1993). Other factors include the reasonableness of the testimony considered in the light of all the evidence in the case (see Illinois Pattern Jury Instructions, Criminal, No. 1.02 (Jury is Sole Judge of the Believability of Witnesses)), detail, specificity, timing, and plausibility (see Michael Kagan, *Is Truth in the Eye of the Beholder? Objective Credibility Assessment in Refugee Status*

*Determination*, 17 Geo. Immigr. L.J. 367, 384 (2003) (setting out "the most important factors that come into play in credibility assessments")).

¶ 24    In this case, the trial court found that O.W.'s testimony, "that she understands what penetration is now and this was not penetration because his erect penis was against her butt cheeks but didn't really penetrate the anus," incredible. In making that assessment the trial court relied on O.W.'s testimony at trial. The court stated that it had listened to O.W.'s testimony "the first time she testified," specifically "the statements that the victim made to the doctor in relation to the examination" and found that at trial, O.W. "exactly knew that she was penetrated even though it was slight penetration but the law only requires slight penetration." The relevant statement to the doctor was O.W.'s statement, which at trial O.W. confirmed and the doctor corroborated, that defendant had sex with O.W. "in the front and in the back" while pointing to O.W.'s crotch and buttocks. This court relied primarily, although not exclusively, on these statements to find that the evidence was sufficient to support the inference defendant committed an act of sexual penetration against O.W. *Watts*, 2014 IL App (1st) 122564-U, ¶ 14 ("the fact remains that [O.W. admitted and the doctor] confirmed that O.W. told her that defendant had sex with her not just from the front, but also 'from the back,' and pointed to her butt to illustrate her meaning. In viewing this evidence in the light most favorable to the State ([citation]), we find that it supports the inference that defendant's penis made 'any contact, however slight,' with O.W.'s anus.").

¶ 25    At the hearing on defendant's petition for postconviction relief O.W. testified that defendant never put his penis inside her vagina or her anus and they never had full sexual intercourse. She also testified there was never any contact, however slight, between defendant's naked penis and her naked anus. O.W. also testified at the hearing that she was 16-years old

when the investigation into her father's conduct started, and that she knew about sexual intercourse when she was 16. At the postconviction evidentiary hearing, O.W. denied ever telling anyone she had sex with her father. When asked if she knows what sex is now, O.W. answered, "Yes."

¶ 26     O.W. testified at the evidentiary hearing she did not remember talking to the doctor but then she testified she definitely did not tell the doctor that she was having sex with her father. On cross-examination, O.W. agreed that she had talked to the doctor and that she knew what sex was at that time. At the hearing O.W. testified that sex meant "sexual intercourse between two people." When asked on cross-examination if she told the doctor her father had sex with her "in the front and back," O.W. testified she did not recall the conversation and did not remember pointing at her vagina and buttocks when saying her father had sex with her in the front and back. However, later in the cross-examination, O.W. was asked the following question and gave the following answer:

"Q.: When you spoke to [the doctor] and she asked you how many times [defendant] had sex with you you said more than ten times.

A.: Yes.

Q.: And those times included both contact when he was in the front with your vagina as well as with your buttocks. Those were the two types of contact?

A.: Yes."

On redirect examination O.W. was asked if her father's penis every made any contact, however slight, against her anus and O.W. answered, "No."

¶ 27     We find no error in the trial court's credibility determination regarding O.W.'s testimony. When witness credibility is to be determined by the trial court a reviewing court will not

substitute its judgment as to credibility unless the trial court's determination is against the manifest weight of the evidence. *Givens v. Givens*, 192 Ill. App. 3d 97, 102 (1989). The trial court's findings are against the manifest weight of the evidence if they are arbitrary, unreasonable, and not based on the evidence. *People v. Wilson*, 2019 IL App (1st) 181486, ¶ 62. Here, the trial court's credibility determination is not against the manifest weight of the evidence.

¶ 28    On appeal, defendant argues that O.W.'s testimony at the hearing is consistent with her trial testimony because her hearing testimony "clarifies any ambiguity in her trial testimony." We disagree. "This court will not reweigh the evidence or second-guess the trial court's credibility determinations, especially where, as here, the evidence amply supports the trial court's conclusions." *Prignano v. Prignano*, 405 Ill. App. 3d 801, 810 (2010). We find that the trial court properly found O.W.'s testimony at the hearing was not credible because the evidence supports that conclusion. The testimony at the hearing was internally inconsistent. The testimony begs the question did O.W. not recall the conversation, did she recall the conversation but not what she said, or did she recall the conversation but only, somehow, what she did *not* say?

¶ 29    The testimony at the hearing also contradicted the testimony and reasonable inferences the trial judge considered O.W. to have made. The trial judge found O.W. "knew that she was penetrated" based on her statements to the doctor that defendant had sex with her. That conclusion is bolstered by O.W.'s testimony at the hearing that at the time she made those statements she knew what sex meant, defendant's postconviction concession that the evidence at trial—including primarily O.W.'s statement to the doctor—was sufficient to sustain his conviction based on vaginal contact, and because there is no evidence O.W. believed "sex" meant anything other than penetration, however slight. We find that the trial court's assessment of O.W.'s credibility was proper.

¶ 30    Next, with the trial court's credibility determination in mind, we turn to the merits of O.W.'s testimony. Defendant argues that O.W.'s statement that defendant had sex with her only raised an inference of sexual penetration but that now O.W. has refuted that inference and "simply clarified her ambiguous trial testimony on the question of whether [defendant's] penis made contact with her anus." However, O.W.'s trial testimony was not ambiguous. O.W. testified, and the doctor confirmed, that O.W. told the doctor that defendant had sex with O.W. more than ten times from the front and from the back. There is nothing ambiguous about that statement. This court had to rely on an "inference that defendant's penis made [contact] with O.W.'s anus" (*Watts*, ¶ 14) because O.W. did not exactly testify that "defendant's penis made contact with my anus." We find that this alleged "ambiguity" is just as likely, and probably is, attributable to use of a different vocabulary rather than any uncertainty or ambiguity. O.W. testified with certainty, and credibly in light of the corroboration by the doctor, that defendant had "sex" with her "from the back."

¶ 31    O.W. also testified at the evidentiary hearing that when she made that statement, she knew was sex was and that it meant "sexual intercourse between two people." A reasonable trier of fact could infer from O.W.'s affirmative and certain testimony that when O.W. testified that defendant had sex with her "from the back" she meant that defendant's penis made contact, however slight, with her anus. Although O.W. testified at the hearing that defendant's naked penis only made contact with her buttocks cheeks, we note O.W. did not testify that she now or at the time of trial considered or thought such contact with her buttocks cheeks was "sexual intercourse between two people." O.W.'s testimony at the evidentiary hearing only posits an alternative inference (that "sex" means rubbing defendant's penis against O.W.'s anus); it does not "clarify" the testimony or refute the jury's reasonable inference. It is the exclusive province

of the trier of fact to listen to the evidence, resolve any conflicts, and draw reasonable inferences. See *People v. Frazier*, 2016 IL App (1st) 140911, ¶ 11.

¶ 32    The underlying testimony remains unchallenged by defendant, especially where O.W. testified that she testified truthfully at the trial. In light of the inconsistent and contradictory nature of O.W.'s postconviction testimony and the reasonableness of the jury's initial inference from her trial testimony, we cannot say that even in light of O.W.'s subsequent testimony "it is more likely than not that no reasonable juror would have convicted [defendant]." See *Edwards*, 2012 IL 111711, ¶ 31. At minimum, we cannot say the trial court's judgment is erroneous to the degree the error is "plain, evident, and indisputable." *People v. Knight*, 2020 IL App (1st) 170550, ¶ 37. We find the trial court's judgment is not manifestly erroneous and, therefore, "the trial judge, who had an opportunity to see and hear [the] witness should be upheld." *Bracey*, 51 Ill. 2d at 517.

¶ 33    Accordingly, the trial court's judgment denying defendant's petition for postconviction relief is affirmed.

¶ 34                              CONCLUSION

¶ 35    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 36    Affirmed.